**Brenda NORRIS, Plaintiff–Appellee,**

**v.**

**SYSCO CORPORATION, a Texas corporation, and Allied–Sysco Food Services, Inc., a California corporation, Defendant–Appellant.**

Brenda Norris, Plaintiff–Appellant,

v.

Sysco Corporation, a Texas corporation, Defendant,

and

Allied–Sysco Food Services, Inc., a California corporation, Defendant–Appellee.

Brenda Norris, Plaintiff–Appellee,

v.

Sysco Corporation, a Texas corporation, Defendant,

and

Allied–Sysco Food Services, Inc., a California corporation, Defendant–Appellant.

Nos. 97–15404, 97–15447, 97–16716.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1999

Filed Sept. 14, 1999

Richard E. Levine, Levine & Skigen, San Francisco, California, for the defendant-appellant-cross-appellee.

Daniel R. Bacon, Law Offices of Daniel Ray Bacon, San Francisco, California, for the plaintiff-appellee-cross-appellant.

Before: WIGGINS, FERNANDEZ, and THOMAS, Circuit Judges.

FERNANDEZ, Circuit Judge:

Brenda Norris brought this action against Allied–Sysco Food Services, Inc. She alleged that, among other things, she had been subjected to discrimination in violation of Title VII, 42 U.S.C. §§ 2000e–2000e–15, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. After the jury rendered a verdict with special interrogatories, the district court entered judgment against Allied. Allied now appeals on grounds that the district court erred in failing to grant it judgment as a matter of law or a new trial,[1] and also erroneously granted attorney's fees against it. For her part, Norris appeals the district court's decision to exclude certain evidence. We affirm.

## BACKGROUND

Norris was employed by Allied as a nonfoods specialist. That was a traveling sales position in which she was required to assist Allied's marketing associates in selling food related supplies and equipment, a job that necessitated driving long distances and occasionally lifting and moving heavy objects.

Working for Allied was never a picnic because the company did engage in practices that unlawfully discriminated against women, or at least the Department of Labor's Office of Federal Contract Compliance Programs was led to believe so. Allied settled that matter by, among other things, offering Norris a promotion to a higher position. At any rate, the jury determined that Allied had, nevertheless, discriminated against her by failing to promote her because she was a woman. That determination is not questioned on appeal. Unfortunately for Norris, the jury also determined that Allied would have failed to promote her even if it had no discriminatory motive. In short, it accepted Allied's mixed motive defense.[2] But that was not the full extent of her problems with Allied which, it seems, did not fully understand its ADA obligations either.

In September of 1994 Norris injured her back on the job, and the very next month she broke her knee in a fall that was not related to her job. She underwent surgery on her knee in November of 1994, and ultimately underwent back surgery in April of 1996. Norris left work on a disability leave in September of 1994. She periodically submitted notes to Allied from her physician which stated that she would not be able to return to work for some time into the future; the period varied from several weeks to two months. However, while on leave she did contact Allied for the purpose of discovering what options or programs it afforded to aid disabled employees, and she also asked about returning to work with accommodations of some kind. She believed that she could return to work, if her driving and other duties were limited in some way. Allied did not really respond to those overtures or take any steps to offer any possible accommodations. In fact, it had a policy which indicated that a person could only return to work if an unrestricted work release from Allied's designated industrial specialists was obtained. Although the policy was not quite as rigid as it looked on paper, it did exist.[3] The jury was satisfied that Allied had not offered Norris a rea-

1. See Norris v. Allied–Sysco Food Servs., Inc., 948 F.Supp. 1418 (N.D.Cal.1996) (Norris I).

2. The jury held against Norris on her claim that she had been subjected to a hostile work environment based upon sexual harassment. She claims that the exclusion of evidence regarding an attempted rape of another employee was improperly excluded and, thus, prejudiced her case on the harassment claim.

3. Were it regularly enforced, it would likely be an ADA violation. See McGregor v. National R.R. Passenger Corp., 176 F.3d 1249, 1252–53 (9th Cir.1999).

sonable accommodation, even though she had requested it.

Intertwined with all of the other events were Norris' applications for and receipt of disability benefits under California's State Disability Insurance at first, and then under Allied's private long-term disability plan, which was insured by Principal Mutual Life Insurance. The application for benefits forms submitted to the insurers indicated that Norris was disabled from doing her own job and any other job, but she, and her physician, have explained that they took all of that to mean that she could not engage in her regular occupation at that time. Their position was that Norris could have returned to work had some reasonable accommodation been offered to her. Again, the jury agreed that none was and found that Allied was at fault.

On the basis of the jury's ADA determination, judgment in the amount of $300,000 was entered against Allied, and the district court further undertook to award attorney's fees to Norris on both the Title VII claim and the ADA claim. In ill-prepared requests, Norris asked that those fees be set at $658,075.

The district court was quite dissatisfied with the form of the requests, which it dubbed as inadequate and, in various ways, excessive, duplicative, based on improperly maintained records, not always based on contemporaneously maintained records, and patently unreasonable. Nevertheless, it was apparent to the court that a good deal of valid work had gone into this hard fought case, and by devoting a great deal of its own time to the determination of fees, while drawing on its own extensive experience and the information that was properly before it, the court determined that fees should be awarded in the amount of $247,840. The court, incidently, also reduced Norris' costs and expense request from $58,795.82 to $24,107.63.

These appeals by both Allied and Norris followed.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's determination regarding a claim that the jury's verdict is internally inconsistent de novo. *See Wilks v. Reyes*, 5 F.3d 412, 415 (9th Cir.1993). That is to say, we must decide for ourselves whether the jury's responses to special interrogatories can be harmonized or whether they are so inconsistent that the verdict should be disregarded and the case remanded for a new trial. *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 666, 9 L.Ed.2d 618 (1963).

We generally review orders awarding attorney's fees for abuse of discretion. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir.1985). "However, we review *de novo* any elements of legal analysis which figure in the district court's decision." *Corder v. Gates*, 104 F.3d 247, 249 (9th Cir.1996); *Hall*, 768 F.2d at 1150. We review the district court's evidentiary determinations, including those under Federal Evidence Rule 403, for abuse of discretion. *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1399 (9th Cir. 1996); *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1333 (9th Cir.1985).

## DISCUSSION

In the principal appeal in this case, Allied strikes out at the judgment against it on two major grounds. It did manage to avoid most of Norris' allonges, but its parries were insufficient to ward off her ADA thrust. It seeks to eliminate the touch of that thrust by asserting that it was actually a foul (the jury's answers were inconsistent) and that she should not have been able to make the thrust in the first place (judicial estoppel or other preclusion). In a separate appeal, it also attacks the attor-

ney's fees which followed that touch and the graze it suffered from the deflected touch of her gender discrimination claim. We consider each of Allied's assertions in turn.

### A. *The Jury's Inconsistent Positions*

■ Allied earnestly claims that pursuant to Federal Rule of Civil Procedure 50 it should have been granted judgment as a matter of law, or at least a new trial, because there was a fatal inconsistency in the jury's answers to special interrogatories presented to it.[4] We disagree.

■ It is certainly true that "[i]f a jury answers special interrogatories and the answers cannot be reconciled, a new trial must be granted." *Tanno v. S.S. President Madison Ves,* 830 F.2d 991, 992 (9th Cir.1987). But it is also true that we do not find inconsistency lightly. Rather:

> We are bound to find the special verdicts consistent if we can do so under a fair reading of them. When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial.

*Toner v. Lederle Labs.,* 828 F.2d 510, 512 (9th Cir.1987) (citations omitted).

In this case, the district court took that injunction seriously, as do we. When the jury's responses are vetted in that way, we, like the district court, are satisfied that the jury could reasonably have decided that in light of the demonstrated policies of Allied, a company which had a rather poor grasp on its ADA obligations, there was no precise refusal to reinstate Norris.[5] At the same time, it could reasonably have decided that there was no offer of a reasonable accommodation to her, even though she requested accommodation.[6] This was a careful, even meticulous, jury which deliberated for seven days and then answered a list of 42 complex interrogatories in a developing area of the law. We are satisfied that the district court's reading of the interrogatory answers was eminently reasonable. That is, while Allied did not absolutely directly refuse to reinstate Norris, it did not offer to accommodate her either. In short, the answers were reconcilable.[7]

### B. *Norris' Inconsistent Positions*

■ Allied asserts that Norris should have been precluded from pursuing her ADA claim before the jury because she applied for and accepted total disability benefits from its group disability insurance carrier, and also received disability benefits from the state. The district court declined to apply judicial estoppel for a myriad of reasons. *See Norris I,* 948 F.Supp. at 1440–49. That decision was made before the Supreme Court's recent

---

4. *See Norris I,* 948 F.Supp. at 1434–40.

5. Special Interrogatory 24 asked: "Did Ms. Norris prove by a preponderance of the evidence that after she began her disability leave but before she was terminated she sought to begin working again and that Allied–Sysco refused to permit her to begin working again?" The jury answered, no.

6. Special Interrogatory 34 asked: "Did Ms. Norris prove by a preponderance of the evidence that Allied–Sysco violated the Americans with Disabilities Act by terminating her?" It went on to explain that the jury should answer "yes" if it found certain elements. Those were: (1) that she was a qualified individual with a disability; (2) that she would have been able to perform the essential functions of her position with reasonable accommodation; (3) that she requested reasonable accommodation from Allied–Sysco, or that Allied–Sysco knew or reasonably should have known that she wanted to resume working with a reasonable accommodation; (4) that Allied–Sysco could have reasonably accommodated her, without undue hardship; (5) that Allied–Sysco did not offer her a reasonable accommodation; and (6) that Ms. Norris' disability was a motivating factor in Allied–Sysco's decision to terminate her. The jury answered, yes.

7. The above being so, we need not, and do not, opine upon the district court's alternate rationales for upholding the jury's decision. *See Norris I,* 948 F.Supp. at 1436–40.

ruling on the issue. *See Cleveland v. Policy Management Sys. Corp.,* — U.S. —, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). The Supreme Court emphasized the fact that an ADA claim of ability to work with accommodation does not necessarily clash with a disability claim assertion (there Social Security Disability Insurance) of inability to do substantial gainful work in the national economy. *See id.* at —, 119 S.Ct. at 1601–03; *see also Fredenburg v. Contra Costa County Dep't of Health Servs.,* 172 F.3d 1176, 1178 (9th Cir.1999); *Johnson v. Oregon,* 141 F.3d 1361, 1366 (9th Cir.1998). The Court, therefore, rejected the use of judicial estoppel, and declared that ADA cases should be treated like other cases where factual contradictions are alleged to exist. *See Cleveland,* — U.S. at —, 119 S.Ct. at 1601–03. That is, in light of the prior statements made by a plaintiff when he was seeking disability benefits, could a reasonable juror find in his favor on his ADA claim? *See id.* at —, 119 S.Ct. at 1604; *see also Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1481–82 (9th Cir.1996). That, of course, is the summary judgment standard; it is also the standard for a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Even after a full blown trial on the merits, the record in this case does not demonstrate that the definition of disability under the ADA and the definitions under the insured disability plan (and state disability plan) were so congruent that Norris is guilty of a degree of mendacity which requires that a judgment as a matter of law should have been entered against her. Nor is the record devoid of explanations for any inconsistencies. Beyond that, proof that a party, like Norris, has made prior inconsistent statements is not a rare event in our courts. Juries are

regularly called upon to consider evidence of that sort, and we all know that prior inconsistency does not inexorably lead to defeat. Moreover, it is well known that "the nature of an individual's disability may change over time." *Cleveland,* — U.S. at —, 119 S.Ct. at 1603. The healing process is often both manifest and marvelous.

We, like the district court and like other courts before us, do feel some discomfort about the seemingly inconsistent representations about facts which regularly show up in this area of the law and enable a claimant to first obtain one recovery and then still another one. We are not insouciant about Allied's claim that it seems somewhat unfair to have it first pay benefits to Norris through its insurer on the theory that she was disabled from working, and then be forced to pay damages because, for ADA purposes, she was not so disabled that she was unable to work with accommodation. Perhaps the result here partly reflects some lack in Allied's presentation of its theories and evidence to the jury at a time when disability doctrinal development is in its infancy. Perhaps it partly reflects the jury's understanding about the problems and dilemmas faced by injured workers as they confront myriads of forms, demands, concepts and needs. *See Fredenburg,* 172 F.3d at 1179–80. At any rate, we are not able to say that the district court erred when, upon its perusal of this record, it decided that assessment of Norris' disparate positions should be consigned to the guided common sense of the jury rather than to the conscience of the bench.[8]

### C. *Attorney's Fee Award*

The district court determined that Norris was entitled to recover attorney's fees from Allied on both her ADA claim[9] and her Title VII,[10] gender discrimination,

---

8. In light of *Cleveland,* we do not adopt the district court's extensive reflections and comments upon the doctrine of judicial estoppel and its explanations of why the doctrine was not applied in this case. *See Norris I,* 948 F.Supp. at 1440–49.

9. 42 U.S.C. § 2000e–5(g)(2)(B).

10. 42 U.S.C. § 12205.

claim. Allied attacks the award of fees on the latter claim in principle because Norris obtained no relief whatever on that claim. It attacks the award on both claims on the theory that Norris made an insufficient showing to support her attorney's fee demand.

### (1) *Title VII Fees*

If Allied is correct about the Title VII portion of the fees, we must set aside the whole fee award without regard to details of proof regarding the proper amount. Therefore, we consider that sortie first.

■ Although the jury was satisfied that Allied had committed an act of gender discrimination against Norris because her gender was a factor in its failure to promote her, it also determined that due to other considerations Allied would not have promoted her anyway. In other words, Allied established a defense to the charges against it, and Norris was not entitled to any damages whatsoever. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 242–47, 109 S.Ct. 1775, 1786–89, 104 L.Ed.2d 268 (1989). Because she did not seek other forms of relief, she obtained no actual relief for herself under the circumstances. In most of the legal world, that would indicate, without further ado, that Norris could not obtain attorney's fees because those are normally awarded to the prevailing party, if, indeed, they are awarded at all. *See, e.g.,* 42 U.S.C. § 1988; *Farrar v. Hobby,* 506 U.S. 103, 114–16, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494 (1992). Not so in this area; Congress has decreed otherwise. That decree is found in 42 U.S.C. § 2000e–5(g)(2)(B), which states, in pertinent part:

On a claim in which an individual proves a violation under section 2000e–2(m) [improper mixed motive action] of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment. . . .

That, of course, means that even though the employer has a defense to damage liability, the somewhat wronged employee may recover attorney's fees. *See Lam v. University of Hawaii,* 40 F.3d 1551, 1564 n. 24 (9th Cir.1994); *see also O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 761 (9th Cir.1996).

So much, then, is clear. But, Allied argues, where a plaintiff recovers nothing at all, the attorney's fee must still be proportional, and that means, it says, that the only correct proportion would be zero. For that proposition it points to *Farrar.* Its attack is not without force, but, ultimately, it cannot prevail and it is driven back upon its own bulwarks.

In *Farrar,* the Supreme Court was considering a claim to attorney's fees under 42 U.S.C. § 1988, and it declared that, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is *usually* no fee at all." *Farrar,* 506 U.S. at 115, 113 S.Ct. at 575 (citation omitted and emphasis added). Justice O'Connor, who was one of the five justices in the majority, put it a little less stringently in her concurring opinion, and rather underscored the word "usually" by making it clear that even a nominal damage award might be more than technical or de minimis where, for example, the legal issue was significant or some public goal was accomplished. *See id.* at 120–22, 113 S.Ct. at 578–79 (O'Connor, J., concurring). That is to say, her "usual" may not be quite as usual as that of the other Justices in the majority. Still, the need for some sort of proportionality between the success of the plaintiff and the fees awarded was agreed to, and that

is what presents the difficulty here. How is proportion to be considered, when the plaintiff has recovered nothing at all, but Congress has given courts discretion to award fees anyway? If taken literally, any attempt at a proportion will yield an infinitely wrong answer when the remedy received is zero. But Congress cannot have intended to be that literal. The difficulty presented has been struggled with and resolved by other Circuits.

■ The best discussion of the problem is found in a Fourth Circuit case. *See Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332 (4th Cir.1996). There, as here, the plaintiff did show a Title VII violation, which infected her layoff, but she would have been laid off anyway. *See id.* at 1334. Thus, she received no damage award, but the district court did give her declaratory relief and attorney's fees. *See id.* The district court had been under the impression that it was required to award attorney's fees to Sheppard, but the court of appeals pointed out that Congress said "may" not "shall," which indicated that the court had discretion under the circumstances. *See id.* at 1335. It noted that courts should "consider the relationship between the fees and the degree of the plaintiff's success." *Id.* at 1336. However, it recognized that, "simply comparing the extent of damage recovery with the attorney's fees would amount to an empty exercise." *Id.* On the other hand, the court doubted the efficacy of primarily benefitting lawyers where "relief to the plaintiff is otherwise trivial and the lawsuit promotes few public goals." *Id.* It continued: "Factoring proportionality concerns into the analysis helps guard against this result." *Id.* Thus, it said, courts should consider such factors as why other relief was not awarded, what public purposes where served, how ubiquitous and wrongful the defendant's conduct was, and the strength of the discriminatory motive and other motives—such as unsatisfactory actions of the employee—in influencing the termination decision, even though both played a part in it. *See id.* at 1336–39. In a word, it held that the district court does have discretion in determining whether, and how large, an attorney's fee should be awarded. *See id.* at 1339; *see also Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

Other courts have adopted the same position. *See Akrabawi v. Carnes Co.*, 152 F.3d 688, 695–697 (7th Cir.1998); *Canup v. Chipman–Union, Inc.*, 123 F.3d 1440, 1443–44 (11th Cir.1997). One Court of Appeals has disagreed with *Sheppard*, but seems to have read that case to mean that only a nominal fee recovery will be allowed when a plaintiff does not obtain damages or an injunction in a mixed motive case. *See Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1080 (10th Cir. 1998). We think that somewhat mistakes the *Sheppard* approach, which we have already outlined. But *Gudenkauf* does seem to go somewhat further when it declares that even in the face of nominal, de minimis, or no, relief a plaintiff should "ordinarily" recover fees. *Id.* at 1081. While that might most often turn out to be the result over time, we see no cause to cabin the district court's ability to assess the whole situation before it in each instance. Thus, while we agree that Congress's determination to allow fees in the absence of a damage award suggests that damages will not be the fulcrum upon which an attorney's fee award usually turns, that does not mean that there can be no fulcrum whatsoever. Perhaps in the long run, *Gudenkauf's* "ordinarily" will rarely yield a result different from *Sheppard's* "proportionality," but to the extent it would, we are satisfied that *Sheppard* states the correct rule. Its approach is faithful to the concerns of both the Supreme Court and Congress.

In the case at hand, the district court thoroughly discussed the issues and did recognize that it had discretion. While it, too, rejected what it mistook as *Sheppard's* connection of damages to fees, that did not, as we read its decision, dissuade it from considering all of the factors that *Sheppard* thought appropriate under the circumstances. As long as all facets of a

case are considered, the result can be little or no fees under any proper approach, including that of the district court.

 In fine, the district court did exercise the kind of broad discretion that is appropriate in this type of case, and did not abuse that discretion when it determined that some fee should be awarded. We do not discuss the precise elements mentioned by the district court because we have no wish to, inadvertently or otherwise, ossify this area by enshrining a list of items to be considered when plaintiffs go shopping for fees. The considerations mentioned by the Fourth Circuit are useful and were touched upon by the district court, but, again, they are neither comprehensive, nor exclusive, nor required in every case. Suffice it to say that, contrary to Allied's position, the mere fact that Norris did not obtain actual tangible relief does not preclude an award of fees to her.

### (2) *The Overall Fees*

Allied then sallies forth to attack the whole of the fee award because Norris presented exceedingly poor records to the district court in her attempt to recover those fees. Or perhaps we should say that her attorney kept exceedingly poor records to support her attempt to recover fees for him. *Cf. United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574, 576–79 (9th Cir. 1996).

 It is the obligation of the party who seeks fees to document "the appropriate hours expended and hourly rates," and he "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941; *see also Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.1992). The deficient presentation by Norris might well have justified the district court in throwing up its hands and refusing to award any fees whatsoever. *See, e.g., Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 606–08 (7th Cir. 1982); *see also Carreathers v. Alexander*, 587 F.2d 1046, 1052 (10th Cir.1978); *Pear-*

*son v. Western Elec. Co.*, 542 F.2d 1150, 1153 (10th Cir.1976); *Keener v. Department of the Army*, 136 F.R.D. 140, 147–49 (M.D.Tenn.1991). Especially is that true where the district court's request for further specific information went unheeded.

 Nevertheless, the district court did not take that approach. It, instead, expended "[a]pproximately ten days of person-power ... in a studied effort to analyze, parse, categorize, evaluate and allocate" hours, all for naught. And it appears that because the court's efforts continued, it must have expended a great deal of time after that considering the information counsel presented and the record so that it could decide upon the appropriateness of an award. We see no need for such a large expenditure of judicial resources in the face of such a miserable presentation by a plaintiff's attorney, and surely this opinion should not be read as encouraging attorneys to keep sloppy records or judges to immolate themselves on a pyre of unhelpful computer printouts. On the other hand, we see no abuse of discretion when a district court decides to struggle with the record and the issues as the court did here. *Cf. In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305–06 (9th Cir.1994).

 As it is, this is not a case where we are presented with a landscape without a road map. *See Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir.1995); *cf. McGrath v. County of Nevada*, 67 F.3d 248, 254–55 (9th Cir. 1995); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir.1986). On the contrary, the district court carefully and meticulously explained its methodology and its reasons for making the adjustments and the award it did. We cannot say that it abused its discretion in setting the fees.

### CONCLUSION

 The district court lavished a great deal of time and attention on this case.

Alas, neither party was satisfied. Nevertheless, no bevue detracts from the result of the court's efforts. It did not err when it excluded certain evidence,[11] refused to apply judicial estoppel, harmonized the jury's answers to interrogatories, and fixed attorney's fees.

AFFIRMED. Norris shall recover her costs on appeal.

11. Norris' assertion that the district court should not have excluded evidence of an alleged attempted rape of a female employee by a coworker is without merit. Despite the fact that the evidence had some relevance to her claim, the district court did not err in determining that the relevance was outweighed by the danger of undue waste of trial time, unfair prejudice and confusion of the issues. *See* Fed.R.Evid. 403.