**Jerry DORAN, Plaintiff,**

**v.**

**DEL TACO, INC. et al., Defendants.**

**No. SA CV 03 1223GLTDA.**

United States District Court,
C.D. California,
Southern Division.

June 9, 2005.

---

Lynn Hubbard, III Law Offices, Adam Sorrells, Scottlynn J. Hubbard, IV, Chico, for plaintiff.

John H. Everett Law Offices, San Diego, for defendants.

## ORDER ON ATTORNEYS' FEES

TAYLOR, District Judge.

Synthesizing current authorities, the Court holds it is a proper exercise of discretion to require a pre-litigation unambiguous warning notice to the defendant and a reasonable opportunity to cure the violation as a prerequisite to recovering attorneys' fees under the federal Americans with Disabilities Act or similar state statutes.

## I. *BACKGROUND*

Plaintiff Jerry Doran is a paraplegic who requires a wheelchair and a mobility-equipped vehicle to travel in public. Plaintiff visited Defendants' Del Taco restaurant in Costa Mesa, California, where he alleges he encountered architectural barriers denying him full and equal access to the restaurant. Plaintiff sued, alleging Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 (1995), and related state laws.

The parties reached a settlement, under which Plaintiff released all claims for equitable relief against Defendants in exchange for Defendants' promise to remedy the architectural barriers and pay $4,000.00 in monetary damages. The settlement left determination of attorneys' fees to this motion. Pursuant to 42 U.S.C. § 12205 of the ADA and California law, Plaintiff requested $39,795.00 in attorneys' fees.

## II. *DISCUSSION*

■ Under § 12205 of the ADA, the Court, in its discretion, may allow the prevailing party a reasonable attorneys' fee.[1] A prevailing party may be determined by a settlement agreement. *See Barrios v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 n. 5 (9th Cir.2002). It is uncontested Plaintiff is the prevailing party. However, the Court concludes, as an exercise of reasonable discretion and common sense, no attorneys' fees are recoverable in the absence of a pre-litigation unambiguous warning notice and a reasonable opportunity to cure the ADA violation.

### 1. *Purpose of the ADA*

The background and purpose of the ADA were well summarized in *Molski v. Mandarin Touch Restaurant,* 347 F.Supp.2d 860, 862 (C.D.Cal.2004) [hereinafter *Molski I*]: The ADA was enacted in 1990 to remedy discrimination against individuals with disabilities. Title III of the ADA, 42 U.S.C. § 12181, requires the removal of structural barriers in existing public accommodations "where such removal is readily achievable." *Id.* § 12182(b)(2)(A)(iv). Where removal of the barrier is not readily achievable, the facility must provide access "through alternative methods if such methods are readily achievable." *Id.* § 12182(b)(2)(A)(v).

To enforce Title III, the ADA contains both a private right of action, *id.* § 12188(a), and a right of action by the Attorney General. *Id.* § 12188(b). While the Attorney General may seek monetary damages on behalf of an aggrieved party, *id.* § 12188(b)(2)(B), the only remedies available under the private right of action are injunctive relief and the recovery of

---

1. Under California Code of Civil Procedure § 1021.5 and Civil Code §§ 52(a), 52(b)(3), and 54.3(a), the Court *may* award attorneys' fees; however, under Civil Code § 55 and Health and Safety Code § 19953, the prevailing party *shall* be entitled to recover reasonable attorneys' fees.

attorneys' fees and costs. *Id.* § 12188(a)(1); *see also* 42 U.S.C. § 2000a–3(a) (2003). By providing different remedies for public and private enforcement, Congress showed its intent to prevent private plaintiffs from recovering money damages under the ADA. *Am. Bus Ass'n v. Slater,* 231 F.3d 1, 5 (D.C.Cir.2000) ("By specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.").

The ADA is not strictly a "private attorney general" statute, in the sense that it does not permit the plaintiff to assert the rights of others. *McInnis–Misenor v. Maine Med. Ctr.,* 319 F.3d 63, 69 (1st Cir.2003); *Blake v. Southcoast Health Sys., Inc.,* 145 F.Supp.2d 126, 134 n. 12 (D.Mass.2001); *Moreno v. G & M Oil Co.,* 88 F.Supp.2d 1116, 1117 (C.D.Cal.2000). However, ADA plaintiffs act in the role of private attorneys general enforcing a civil rights statute. *Bruce v. City of Gainesville,* 177 F.3d 949, 952 (11th Cir.1999); *Walker v. Carnival Cruise Lines,* 107 F.Supp.2d 1135, 1143 (N.D.Cal.2000).

### 2. *Distortion of the ADA*

During its relatively short existence, the ADA has attracted sharp criticism from judges, lawyers, and legal scholars as having been distorted by certain lawyers into a cynical money-making scheme. The *Molski I* opinion noted the way the ADA has been manipulated to generate attorneys' fees: Enterprising plaintiffs and their attorneys have found a way to circumvent the will of Congress by seeking money damages while retaining federal jurisdiction. Because a violation of the ADA also frequently constitutes a violation of state law, plaintiffs can sue in federal court for injunctive relief under the ADA and add state law claims for money damages.[2]

The ability to profit from ADA litigation has given rise to "a cottage industry." *Rodriguez v. Investco, LLC,* 305 F.Supp.2d 1278, 1280–82 (M.D.Fla.2004). The scheme is simple: An unscrupulous law firm sends a disabled individual to as many businesses as possible in order to have him or her aggressively seek out all violations of the ADA. Then, rather than simply informing a business of the violations and attempting to remedy the matter through "conciliation and voluntary compliance," *id.* at 1281, a lawsuit is filed, requesting damage awards that could put many of the targeted establishments out of business. Faced with costly litigation and a potentially drastic judgment against them, most businesses quickly settle. *Molski I,* 347 F.Supp.2d at 863.

As the *Molski I* court observed, the result of this scheme is that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)." *Id.* (quoting *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368, 1375 (M.D.Fla.2004)). Serial plaintiffs serve as "professional pawn[s] in an ongoing scheme to bilk attorney's fees." *Id.* (quoting *Rodriguez,* 305 F.Supp.2d at 1285). It is a "type of shotgun litigation [that] undermines both the spirit and purpose of the ADA." *Id.* (quoting *Brother,* 331 F.Supp.2d at 1375).

Frustration with the perceived manipulation of the ADA to produce attorneys' fees led Judge Rafeedie of the Central District of California in a second *Molski* opinion to condemn counsel for abusive and predatory litigation practices, declare their plaintiff a vexatious litigant, find

**2.** In California, the state statutes that parallel the federal ADA, but allow money damages, are the Unruh Civil Rights Act, Cal. Civil Code § 51(f) (West 2003), and the Disabled Persons Act, *id.* § 54(c).

counsel presented multiple excessive claims "bordering on extortionate shysterism," and urge a State Bar investigation and counsels' suspension or disbarment. *Molski v. Mandarin Touch Rest.*, 359 F.Supp.2d 924, 926–27, 934, 937 (C.D.Cal. 2005) [hereinafter *Molski II*]. The court noted the damage from such fee abuse is not limited to the businesses and insurers that are victims of the scheme:

> The integrity of the bar is called into question by the well-publicized accounts of lawyers employing unethical tactics in the pursuit of their own financial gain. The legitimacy of the courts is also injured because the public may view the courts as complicit in allowing these shakedown schemes to continue. Most importantly, this type of litigation creates a backlash against disabled persons who rely on the ADA as a means of achieving equal access.

*Id.* at 937.

### 3. *Notice Not Required as a Prerequisite to File Suit*

Many observers have commented that the problem of fee-driven ADA cases could be largely mitigated by simply requiring a clear advance notice to a prospective defendant of an ADA violation, and a reasonable opportunity to fix the defect, as a prerequisite to filing an ADA lawsuit. However, the ADA does not require such notice.

Some early cases held the ADA could be construed to require notice to a proposed defendant and an opportunity to cure as a prerequisite to filing suit. *Snyder v. San Diego Flowers*, 21 F.Supp.2d 1207, 1210–11 (S.D.Cal.1998), *abrogated by* 216 F.3d 827 (9th Cir.2000), stated why pre-suit notice was desirable:

> Requiring potential plaintiffs to notify offenders and provide an opportunity to remediate before filing suit is likely to solve access problems more efficiently than allowing all violators to be dragged into litigation regardless of their willingness to comply voluntarily with the ADA once informed of its infractions. The goals of the ADA do not include creating an incentive for attorneys to seek statutory fees by laying traps for those who are ignorant of the law.

However, the law was clarified when the Ninth Circuit held in 2000 that an ADA plaintiff is *not* required to provide notice as a prerequisite to filing suit. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir.2000); *accord Iverson v. Comsage, Inc.*, 132 F.Supp.2d 52, 54–56 (D.Mass. 2001).

Repeated efforts have been made in Congress to amend the ADA to provide pre-suit notice. However, proposed notification bills failed in the 106th Congress (1999–2000), 107th Congress (2001–2002), and 108th Congress (2003–2004). Results in the 109th Congress (2005–2006) remain to be seen.

### 4. *Court Movement Toward Notice Requirement for Discretionary Recovery of Attorneys' Fees*

Although a warning notice is not a prerequisite to filing an ADA suit, several courts have begun to consider whether, in the exercise of proper discretion, attorneys' fees should be withheld if no clear advance notice and opportunity to cure is given.

In *Rodriguez v. Investco, LLC*, the court contemplated the reasons plaintiff's attorney rushed to file suit with no effort to first communicate with the property owner to encourage voluntary compliance, no warning, and no offer to forbear during a reasonable period of time while remedial measures are taken:

> Why would an individual like Plaintiff be in such a rush to file suit when only injunctive relief is available? Wouldn't conciliation and voluntary compliance be

a more rational solution? Of course it would, but pre-suit settlements do not vest plaintiffs' counsel with an entitlement to attorney's fees. Moreover, if a plaintiff forebears and attempts pre-litigation resolution, someone else may come along and sue first. The current ADA lawsuit binge is, therefore, essentially driven by economics—that is, the economics of attorney's fees.

305 F.Supp.2d at 1281–82 (footnotes and citation omitted).

Judge Presnell, in *Rodriguez,* went on to muse in dicta:

One might reasonably ask whether attorney's fees should be awarded where no effort is made pre-suit to obtain voluntary compliance. After all, if the litigation achieves no result other than that which could be accomplished by agreement, what social or economic value has been added by the lawyer's decision to file a suit without warning? Indeed, under this scenario, it would seem that litigation carries only negative economic value—it has accomplished nothing but expense and waste of precious judicial resources.

*Id.* at 1282 n. 14.

The following year, in an unpublished order, Judge Moody cited *Rodriguez* and denied attorneys' fees in an ADA case. *Macort v. Checker Drive–In Rests., Inc.,* 2005 WL 332422, at *1 (M.D.Fla. Jan. 28, 2005). Judge Moody wrote, "This Court is not inclined to award attorney's fees for prosecuting a lawsuit when a pre-suit letter to the Defendant would have achieved the same result." *Id.*

5. *California Supreme Court Adopts Pre–Litigation Notice Requirement for Private Attorney General Fees*

The California Supreme Court, in a persuasive parallel to this case, recently adopted the view that, to recover attorneys' fees in a private attorney general case, a plaintiff must have engaged in a reasonable attempt to settle his or her dispute with the defendant before litigation. *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 577, 21 Cal.Rptr.3d 331, 101 P.3d 140 (2004). In *Graham,* the court noted the risk that public interest litigation could encourage nuisance suits by unscrupulous attorneys to extort attorneys' fees. *Id.* at 574, 21 Cal.Rptr.3d 331, 101 P.3d 140. The court held it could adopt sensible limitations to prevent extortionate litigation because judges are expected and instructed to exercise discretion to determine that the lawsuit achieved its result "by threat of victory" and not "by dint of nuisance and threat of expense." *Id.* at 575, 21 Cal.Rptr.3d 331, 101 P.3d 140 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 628, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (Ginsburg, J., dissenting)).

The *Graham* court justified a requirement that a private attorney general plaintiff seeking fees first reasonably and unambiguously attempt to settle short of litigation:

We believe this requirement is fully consistent with the basic objectives behind section 1021.5 and with one of its explicit requirements—the "necessity . . . of private enforcement" of the public interest. Awarding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation does not advance that objective and encourages lawsuits that are more opportunistic than authentically for the public good. Lengthy prelitigation negotiations are not required . . . but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time. What constitutes a

"reasonable" time will depend on the context.

*Id.* at 577, 21 Cal.Rptr.3d 331, 101 P.3d 140; *see also Tipton–Whittingham v. City of Los Angeles,* 34 Cal.4th 604, 608, 21 Cal.Rptr.3d 371, 101 P.3d 174 (2004) (holding that, to recover private attorney general fees, a plaintiff must reasonably attempt to settle before litigation); *Grimsley v. Bd. of Supervisors,* 169 Cal.App.3d 960, 966, 213 Cal.Rptr. 108 (Ct.App.1985) (holding private attorney general fees will not be awarded unless the plaintiff first attempts to resolve the matter without litigation and attendant expense).

### 6. *Rule of Proportionality Supports Warning Notice Requirement for Fee Award*

In *Norris v. Sysco Corp.,* 191 F.3d 1043, 1050–51 (9th Cir.1999), the Ninth Circuit indicated the need for proportionality between the success of the plaintiff and the fee award.[3] In *Norris,* the Ninth Circuit provided non-exclusive factors for district courts to consider in determining proportionality. *Id.* at 1051. The factors include (1) why other relief was not awarded, (2) what public purposes were served, (3) how ubiquitous and wrongful the defendant's conduct was, and (4) the strength of the discriminatory motive. *Id.* The Ninth Circuit emphasized the "district court's ability to assess the whole situation before it in each instance." *Id.* "As long as all facets of a case are considered," the Ninth Circuit noted, "the result can be little or no fees." *Id.* at 1051–52.

The reason other relief was not awarded will normally be apparent in an ADA case, either because a settlement was reached or the statute limits the relief available. The public purpose served will also be evident: compliance with an important civil rights law. However, the nature of a defendant's conduct and discriminatory motive are difficult to assess if the violation has not been first called to the defendant's attention and an opportunity to cure has not been given. Without such notice, it will usually be unclear if the suit was really necessary to achieve the public purpose. If, however, an unambiguous notice is given and the defendant does not cure the problem, strong evidence is presented concerning need for the suit, and an inference of wrongful conduct and discriminatory motive may arise. The rule of proportionality strongly supports a discretionary requirement of a pre-litigation unambiguous notice and a reasonable opportunity to cure for the award of attorneys' fees in ADA cases.

### 7. *Proper Exercise of Discretion to Require Unambiguous Warning Notice and Reasonable Cure Opportunity as ADA Attorneys' Fee Prerequisite*

The Court holds it is a proper exercise of discretion and common sense in an ADA case or a parallel state case to require, as a prerequisite to recovering attorneys' fees, a pre-litigation unambiguous warning notice to the defendant and a reasonable opportunity to cure the violation. *See* 42 U.S.C. § 12205; *Norris,* 191 F.3d at 1050–52; *Bruce,* 177 F.3d at 952; *Molski I,* 347 F.Supp.2d at 862–63; *Molski II,* 359 F.Supp.2d at 926–27, 934, 937; *Rodriguez,* 305 F.Supp.2d at 1280–82; *Graham,* 34 Cal.4th at 574–75, 577, 21 Cal.Rptr.3d 331, 101 P.3d 140. Such a notice will permit the Court to know the essential criterion for the award of attorneys' fees: whether a lawsuit was really necessary. Such a notice will permit legitimate ADA advo-

---

**3.** *Norris* dealt with a Title VII attorneys' fee issue, applying the ADA attorneys' fee provi-   sion. 191 F.3d at 1049 & n. 10, 1050.

cates to warn the defendant and get the problem fixed without having to file a needless, frequently extortionate, lawsuit.

It is fair and reasonable to require a pre-litigation unambiguous notice and a reasonable opportunity to cure before allowing attorneys' fees in an ADA case. Litigation is not necessarily needed to obtain ADA compliance. A wise business will comply with a fair warning of ADA problems, and statistics presented to Congress show that most do. A true attorney general would not immediately sue, but would give a business an opportunity to fix the problem. The existence of an ADA violation does not necessarily mean knowledge of, and indifference to, the ADA; full compliance with detailed ADA standards is difficult, and many businesses think they are ADA compliant based on assurances from local inspectors or outside consultants. There is frequently room for honest disagreement on whether removing a particular barrier is "readily achievable."

█ An undated, unsigned letter in advance of litigation was sent in this case, but it was not unambiguous. It made a general complaint that the sender "could not find handicapped parking" and "had serious problems trying to use your restroom," and asked Defendants to "please take care of these problems at once." Although the letter put Defendants on general notice that they may not be ADA compliant, it provided nothing specific. An unambiguous warning notice would specify and detail the nature of the claimed ADA violation, and warn of the need for a lawsuit if the defect is not fixed within a reasonable time. Plaintiff's letter does not unambiguously accomplish those objectives. Without an appropriate advance notice, the Court is unable to find the lawsuit was necessary.

## III. DISPOSITION

Plaintiff's motion for attorneys' fees is DENIED.