**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAMDOUH EL-HAKEM,
        *Plaintiff-Appellee,*

v.

BJY INC., a foreign corporation;
GREGG YOUNG, an individual,
        *Defendants-Appellants.*

No. 03-35514

D.C. No.
CV-01-00663-BR

MAMDOUH EL-HAKEM,
        *Plaintiff-Appellant,*

v.

BJY INC., a foreign corporation;
GREGG YOUNG, an individual,
        *Defendants-Appellees.*

No. 03-35544

D.C. No.
CV-01-00663-AJB

MAMDOUH EL-HAKEM,
        *Plaintiff-Appellee,*

v.

BJY INC., a foreign corporation;
GREGG YOUNG, an individual,
        *Defendants-Appellants.*

No. 04-35063

D.C. No.
CV-01-00663-AJB

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
December 8, 2004—Portland, Oregon

8567

Filed July 21, 2005

Before: Thomas G. Nelson, Johnnie B. Rawlinson, Circuit
Judges, and William W Schwarzer,* District Judge.

Opinion by Judge Rawlinson

---

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

## COUNSEL

Krishna Balasubramani, Sather, Byerly and Holloway, LLP, Portland, Oregon, for the defendants-appellants/cross-appellees.

Patty T. Rissberger (briefed), Craig A. Crispin (argued), Crispin Employment Lawyers, Portland, Oregon, for the plaintiff-appellee/cross-appellant.

## OPINION

RAWLINSON, Circuit Judge:

This case presents challenges to the district court's post-verdict rulings following a jury trial. Because the district court properly resolved the parties' respective motions, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mamdouh El-Hakem, who is of Arabic heritage, brought this action against his former employer BJY, Inc., and Gregg Young, BJY's Chief Executive Officer, for employment discrimination, wrongful termination, and failure to pay wages. Claims were made under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, as amended); the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*); Oregon Revised Statutes § 652.140 *et seq.*; and related state statutes.

El-Hakem's racial discrimination claims stemmed from Young's repeated references to El-Hakem as "Manny." Despite El-Hakem's strenuous objections, Young insisted on using the non-Arabic name rather than "Mamdouh," El-Hakems's given name. In Young's expressed view, a "Western" name would increase El-Hakem's chances for success and would be more acceptable to BJY's clientele.

El-Hakem's wage claims were predicated upon assertions that BJY failed to pay El-Hakem regular and overtime wages during his employment and after his employment with BJY ended, which occurred when BJY closed the office where El-Hakem worked.

After a five-day trial, the jury completed interrogatories on separate special verdict forms for each of the Defendants. The jury found that Young intentionally discriminated against El-Hakem on the basis of his race in violation of 42 U.S.C. § 1981 by creating a hostile work environment, and awarded him $15,000 in compensatory damages and $15,000 in punitive damages. In addition, the jury found that BJY failed to pay El-Hakem regular wages in the amount of $11,051.64 due at the time El-Hakem's employment ended.

The jury found in favor of the Defendants on El-Hakem's remaining claims, including his hostile work environment,

wrongful termination and retaliation claims against BJY. Although the jury concluded that El-Hakem's complaints about his unpaid wages were a substantial motivating factor in BJY's decision to terminate him, it also concluded that BJY would have made the same termination decision even if El-Hakem had not complained.

Both Young and El-Hakem moved for judgment as a matter of law. Young contended that he could not be held liable for racial discrimination in violation of § 1981 because his conduct was not race-based. El-Hakem asserted that BJY was vicariously liable for racial discrimination pursuant to Title VII, and that the "same decision" defense does not apply to a wage-retaliation claim asserted under Oregon's wage protection statutes.

The district court denied Young's motion in its entirety. El-Hakem's motion was granted to the extent he sought to impose vicarious liability upon BJY for racial discrimination, and the district court amended the judgment to reflect BJY's vicarious liability on the racial discrimination claim. El-Hakem's motion was denied regarding application of the "same decision" defense to his state law wage-retaliation claim.

Each party appealed the adverse portions of the court's post-verdict rulings. Young and BJY also appealed the district court's failure to apportion the attorney's fees awarded to El-Hakem.

## II. STANDARDS OF REVIEW

The district court's decision on a motion for a judgment as a matter of law is reviewed *de novo. LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). We view the evidence in the light most favorable to the non-moving party, and all reasonable inferences are drawn in that party's favor. *Id.* A motion for a judgment as a matter of law is properly

granted only if no reasonable juror could find in the non-moving party's favor. *Sanghvi v. City of Claremont*, 328 F.3d 532, 536 (9th Cir. 2003). A district court's determination that a jury's verdict is internally inconsistent is also reviewed *de novo. Norris v. Sysco Corp.*, 191 F.3d 1043, 1047 (9th Cir. 1999).

Attorney fee awards are reviewed for an abuse of discretion. *Corder v. Gates*, 947 F.2d 374, 377 (9th Cir. 1991). A "district court's fee award will be overturned [only] if it is based on an inaccurate view of the law or a clearly erroneous finding of fact." *Id.* (citations omitted). We review the district court's interpretation of state law *de novo. Woods v. Graphic Comm.*, 925 F.2d 1195, 1199 (9th Cir. 1991).

## III.   DISCUSSION

### 1.   The District Court Properly Denied Young's Motion for Judgment as a Matter of Law on the Racial Discrimination Claim

**[1]** Defendants argue that they could not be held liable for intentionally discriminating on the basis of race under § 1981, because the name "Manny" is not a racial epithet. We disagree with Defendants' premise. Their contention that actionable race discrimination must be based on physical or "genetically determined characteristics such as skin color" ignores the broad reach of § 1981. In *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987), the Supreme Court explained that "a distinctive physiognomy is not essential to qualify for § 1981 protection." Rather, the section was "intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Id.*

**[2]** A group's ethnic characteristics encompass more than its members' skin color and physical traits. Names are often a proxy for race and ethnicity. *See Orhorhaghe v. INS*, 38

F.3d 488, 498 (9th Cir. 1994) (recognizing that "discrimination against people who possess surnames identified with particular racial or national groups is discrimination on the basis of race or national origin.") (citation omitted).

In *Manatt v. Bank of America*, 339 F.3d 792, 794-95 (9th Cir. 2003), we identified two incidents of racial derogation directed at a Chinese woman. One instance occurred when other employees ridiculed the woman for mispronouncing "Lima," and the other consisted of employees pulling their eyes back with their fingers in mocking imitation of the appearance of Asians. *Id.* at 798. Although the second instance is an example of discrimination directed at a genetically-determined physical trait, the first is not. In the first instance, the coworkers were ridiculing the woman's language and pronunciation rather than a physical characteristic. Thus, Defendants misread *Manatt* when they cite it for the proposition that racial discrimination must be based solely on physical traits.

[3] We also reject Defendants' contention that Young's conduct was not frequent or pervasive enough to create a hostile work environment. It is true that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). It is also correct that this standard also applies to the § 1981 claim at issue in this case, because we evaluate § 1981 claims the same as we do Title VII claims. *See Manatt*, 339 F.3d at 797. However, as the district court noted, "rational jurors could find [that] Young's intentional conduct created a hostile work environment because his conduct was sufficiently pervasive to alter the conditions of Plaintiff's employment and to create a work environment racially hostile to a reasonable Arab." (case citations omitted).

"The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct."

*Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (citation and internal quotation marks omitted). Although Young's conduct may not have been especially severe,[1] there was unrefuted evidence of its frequency and pervasiveness. The jury heard testimony that Young continued to use the name "Manny" over El-Hakem's repeated objections. El-Hakem first objected to Young's use of "Manny" in a marketing meeting. Despite El-Hakem's objection, Young insisted on calling him "Manny" in a subsequent telephone conversation and e-mail. Approximately one month later, El-Hakem proposed in an e-mail that Young use Hakem, his last name, if he found Mamdouh difficult to pronounce. Rather than call him Hakem, Young suggested in his reply e-mail that El-Hakem be called "Hank." El-Hakem objected again. Despite El-Hakem's continued objections, Young persisted in calling El-Hakem "Manny" once a week in the Monday marketing meeting for approximately two months, and in e-mails at least twice a month thereafter. The conduct continued for almost a year, from May, 1999 to April, 2000. Because these incidents were frequent and consistent rather than isolated, a reasonable juror could conclude that El-Hakem's work environment was hostile.

**[4]** Finally, we disagree with Defendants' contention that El-Hakem failed to present evidence of Young's discriminatory intent. In Defendants' view, there was no evidence of intent because "even if plaintiff felt the name 'Manny' had racial implications, there is no indication Mr. Young felt that way." However, the record is clear that Young intended to discriminate against El-Hakem's Arabic name in favor of a non-Arabic name, first by altering Mamdouh to "Manny" and then by changing Hakem to "Hank." Therefore, there was sufficient evidence of discriminatory intent to support the jury's verdict, and the district court properly denied Young's motion for judgment as a matter of law.

---

[1]El-Hakem conceded that Young's conduct was not "severe."

## 2. The District Court Did Not Err in Reconciling the Verdict

In its special verdict responses, the jury found Young liable for race discrimination under § 1981 but did not find BJY similarly liable, even though the evidence showed that Young was acting in the course and scope of his employment at all pertinent times. After concluding that the special verdicts were inconsistent, the district court amended the judgment to hold BJY vicariously liable for discrimination.

[5] When confronted by seemingly inconsistent responses to special verdict interrogatories, a trial court has a duty to harmonize those responses whenever possible. *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963). In doing so, the court "must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and . . . [t]he consistency of the jury verdicts must be considered in light of the judge's instructions to the jury." *Toner ex rel. Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir. 1987) (citations omitted).

[6] In this case, the district court recognized that its failure to give a requested vicarious liability instruction led to the inconsistent responses from the jury. Because the evidence established that Young was acting in the scope of his employment at all pertinent times, BJY was liable for Young's acts as a matter of law,[2] and the district court properly amended the judgment to include BJY's vicarious liability for race discrimination. Because the jury was not instructed that it must find against BJY if it found against Young, the jury responses

---

[2]Under Title VII, there is a presumption that "an employer is vicariously liable for a hostile environment created by a supervisor." *Nichols*, 256 F.3d at 876-77. Moreover, the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt*, 339 F.3d at 797 (citations omitted). In this case, Young was found liable for creating a hostile work environment under § 1981, and "BJY did not plead, prove, or seek any jury instruction to avoid vicarious liability."

could be reconciled by considering the probable effect on the jury of not having the benefit of the correct instructions. The district court reasonably concluded that the only reason the special verdicts were inconsistent was due to the lack of appropriate instructions. Having concluded that inclusion of the vicarious liability instruction would have inevitably resulted in consistent verdicts of liability against both defendants, the district court did not abuse its discretion by amending the judgment to impose vicarious liability upon BJY. *See Westinghouse Elec. Corp. v. General Cir. Break. & Elec. Supply Inc.*, 106 F.3d 894, 901 (9th Cir. 1997) (approving adjustments to the jury verdict in the face of a "flawed instruction").

Defendants also challenge the amount of damages assessed against BJY. The district court concluded that a new trial on the question of damages against BJY was unnecessary because the "jury's finding as to Plaintiff's compensatory and punitive damages for this claim are supported by substantial evidence." The court awarded El-Hakem the same damages against BJY that the jury awarded against Young. Defendants assert that the amount of punitive damages for a corporation and an individual "may be different." Although it is true that punitive damage awards[3] *may* be different, Defendants failed to rebut the district court's conclusion that the amount of punitive damages against BJY was supported by substantial evidence presented to the jury.

## 3. The District Court Did Not Err in Declining to Apportion the Attorney's Fees Awarded to El-Hakem

Defendants contend that the district court should have apportioned the award of attorney's fees between the state law

---

[3]In fact, BJY probably benefitted from the court's decision, because punitive damage awards against corporations are usually considerably higher than those awarded against individuals. Dennis P. Stolle et al., *The Perceived Fairness of the Psychologist Trial Consultant: An Empirical Investigation*, 20 Law & Psychol. Rev. 139, 148-49 (1996).

wage claim and the federal discrimination claim, as the state law wage claim was unsuccessful. According to the Defendants, "it is improper from the standpoint of equity and common sense to hold Mr. Young liable for the fees and costs incurred in prosecuting the wage claim."

**[7]** In deciding whether apportionment is mandated, the court focuses on the time expended by the plaintiff in pursuing each defendant, rather than on relative liability. *Corder,* 947 F.2d at 382. We have upheld district courts' decisions to apportion fees in several cases. *See, e.g., Jones v. Espy*, 10 F.3d 690, 691-92 (9th Cir. 1993); *Woods*, 925 F.2d at 1207; *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125-26 (9th Cir. 1981). We have held that a court abused its discretion in not apportioning fees "when the time expended by the plaintiff in pursuing each defendant was grossly unequal." *Corder*, 947 F.2d at 383 (citation and emphasis omitted). We have concluded that a court acted within its discretion when fees were apportioned between successful claims and unsuccessful claims. *See Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 905 (9th Cir. 1995). Neither circumstance exists in this case. There was no gross disproportion in the time expended by El-Hakem's counsel as between BJY and Young because the claims against the two defendants were virtually interchangeable. Neither was there a need to apportion the fee award as to the respective claims, because only a small percentage of the total hours expended was attributable to the state law wage claim, a portion of which was successful.[4] The district court's conclusion that the state law wage claim "required little in the way of either factual development or legal analysis" is supported by the record, and bolsters the court's decision that apportionment of the

---

[4]The district court concluded that the bulk of the fees for the wage claim was subsumed in counsel's "General Litigation" billings. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) (recognizing that "[m]uch of counsel's time will be devoted generally to the litigation as a whole").

fees was not warranted. *See Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983) (recognizing the difficulty of "divid[ing] the hours expended on a claim-by-claim basis.").

### 4. The District Court Properly Denied El-Hakem's Motion for Judgment as a Matter of Law Challenging Application of the "Same Decision" Defense to His Wage-Retaliation Claim

El-Hakem contends that the district court erred in allowing the Defendants to assert the "same decision" defense to his wage retaliation claim because: (1) the "same decision" defense is inapplicable to a wage retaliation claim under Or. Rev. Stat. § 652.355; and (2) if the defense is applicable, the defendants waived the affirmative defense by failing to raise it in the pretrial order.[5]

**[8]** Under § 652.355, a plaintiff must show that an employer discharged him because of the employee's wage claim.[6] In *Hardie v. Legacy Health Sys.*, 6 P.3d 531, 536-37

---

[5]The district court summarized the facts relevant to the "same decision" defense as follows:

> In response to the Court's interrogatories, the jury found [that] BJY terminated Plaintiff's employment. Although the jury found Plaintiff's complaints about unpaid wages were a substantial motivating factor in the decision of BJY to terminate Plaintiff's employment, the jury also found BJY would have made the same decision in the absence of Plaintiff's complaints. The jury logically could have based these findings on evidence that BJY ultimately closed its Portland office because Plaintiff, its only employee there, was not licensed to provide the professional services BJY sold to its clients.

[6]Section 652.355 provides, in relevant part:

> (1) No employer shall discharge or in any other manner discriminate against any employee because:

> (a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim.

Or. Rev. Stat. § 652.355.

(Or. App. 2000), *partially superseded by statute on other* grounds, the court considered a "mixed motive" discrimination claim under a similar retaliation statute, Or. Rev. Stat § 659.410(1), which makes it unlawful for an employer to retaliate against an employee who invokes the workers' compensation system. The court held that under this section, if an employer denies any discriminatory motive and asserts a non-discriminatory reason for the plaintiff's termination, then "a plaintiff must be able to show that he or she would not have been fired but for the unlawful discriminatory motive of the employer." *Id.* at 537 (citation and internal quotation marks omitted). Stated differently, the plaintiff must show that the employer would not have made the "same decision" to terminate him in the absence of the discriminatory motive.

**[9]** The retaliation claim at issue in *Hardie* and El-Hakem's retaliation claim place identical burdens on the plaintiff, both requiring a plaintiff to show he was fired "because of" the employer's retaliatory motive. Therefore, the district court correctly determined that the "same decision" defense is available under § 652.355 just as it is under § 659.410(1).

El-Hakem alternatively argues that if the "same decision" defense is available, the Defendants failed to assert it in the pretrial order as required. In response, the Defendants contend that they had no duty to raise the defense in the pretrial order because "the issue is not a defense, but an aspect of plaintiff's burden of proof."

**[10]** A pretrial order controls the subsequent course of the action unless modified "upon a showing of good cause." *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted). Accordingly, a party may not "offer evidence or advance theories at the trial which are not included in the order or which contradict its terms." *United States v. First Nat'l Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) (footnote reference omitted). Because parties have a duty to advance any and all theories in the pretrial order,

BJY had a duty to assert its theory that it would have made the same decision to terminate El-Hakem even if a retaliatory motive also existed. BJY's contention that it did not have this duty because El-Hakem has the burden of proof is without merit. A defendant must enumerate its defenses in a pretrial order even if the plaintiff has the burden of proof. *See Southern Cal. Retail Clerks Union v. Bjorklund*, 728 F.2d 1262, 1264 (9th Cir. 1984) (holding, in action to recover trust fund contributions, that defendant failed to preserve his defense that third party was acting as plaintiff's agent.).

**[11]** Although the pretrial order did not reflect that BJY noticed the "same decision" defense in response to El-Hakem's wage-retaliation claim, notice was given in the pretrial order that BJY advanced the identical "same decision" defense to El-Hakem's federal discrimination claims. Therefore, El-Hakem should have been alerted to, and sufficiently prepared for, BJY's assertion of the defense. BJY's reference to the defense in the pretrial order, albeit in response to a different claim, distinguishes this case from the cases El-Hakem relies on for support. In those cases, defendants failed to include *any* reference to the defense in the pretrial order. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) (finding defense waived when raised for the first time in reply brief to appellate court); *Southern Cal. Retail Clerks Union*, 728 F.2d at 1264 (concluding that issue was waived where no colorable reference to defense in pretrial order).

**[12]** The district court had the authority to modify the pretrial order and implicitly exercised that authority in permitting BJY to advance the "same decision" defense. In the absence of any prejudice to El-Hakem, we cannot say that the district court abused its discretion.

## IV.   CONCLUSION

The district court properly denied Young's motion for judgment as a matter of law on El-Hakem's intentional discrimi-

nation claim. Young's persistent reference to El-Hakem by a racially-motivated nickname supported the jury's finding of discrimination. The court also properly amended the judgment to hold BJY vicariously liable for racial discrimination, and acted within its discretion in declining to apportion the attorney's fees. Finally, the court's consideration of the "same decision" defense was within its discretion and its application of the doctrine was consistent with Oregon law.

**AFFIRMED**.