Steven BROTHER, Plaintiff,

v.

TIGER PARTNER, LLC, d/b/a:
Best Western Deltona Inn,
Defendant.

No. 6:03–CV–445–ORL–22JG.

United States District Court,
M.D. Florida,
Orlando Division.

July 6, 2004.

William Nicholas Charouhis, Charouhis & Associates, P.A., Miami, FL, for plaintiff.

Teresa Adamson Herrmann, Akerman Senterfitt, Orlando, FL, for defendant.

**O**RDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the Defendant's, Tiger Partner, LLC, d/b/a: Best Western Deltona Inn, Motion for Summary Judgment (Doc. No. 35), filed April 1, 2004, to which the Plaintiff, Steven Brother, responded (Doc. No. 45) on May 24, 2004. Having reviewed the motion and memoranda, this Court GRANTS the Motion for Summary Judgment (Doc. No. 35).

## II. BACKGROUND

### A. Generally

The Plaintiff, Steven Brother (hereinafter, "Mr.Brother"), is a resident of Miami,

Florida.[1] Due to injuries sustained in a 1989 automobile collision, Mr. Brother is permanently disabled: he is profoundly deaf and partially paralyzed in one leg.[2] The paralysis requires Mr. Brother to utilize a wheelchair for mobility.[3]

Since 2000, Mr. Brother has been unemployed.[4] As a result, he currently supports himself and his family through monthly social security checks and food stamps totaling $1,600,[5] and $178 respectively.[6] He has no savings or investment accounts.[7]

Notwithstanding Mr. Brother's limited financial resources, he frequently travels to locations throughout the State of Florida.[8] These travels have resulted in at least fifty-four lawsuits against public accommodations alleging violations of the Americans With Disabilities Act (hereinafter, "the ADA"), 42 U.S.C. §§ 12101–12213. Many of the lawsuits are against hotels purportedly visited by Mr. Brother. In *Brother v. Ocean Jewels Club Condo Ass'n*, 6:03–CV–432–ORL–28KRS (M.D.Fla.2003), for example, Mr. Brother sued the Travelodge in Daytona Beach

concerning an October or November 2002 visit.[9] Similarly, in *Brother v. Americano Beach Lodge Resort Condo. Ass'n*, 6:03–CV–699–Orl–28DAB (M.D.Fla.2003), Mr. Brother sued the Americano Beach Resort of Daytona Beach in relation to an April 2003 visit.[10]

In almost all of his lawsuits, Mr. Brother is represented by William Charouhis. Mr. Brother reports that Mr. Charouhis charges no fee for his services:

Q. Okay. What is your agreement with Mr. Charouhis as to the payment of his attorney's fees for this case?
A. That's really up to Mr. Charouhis. If he wants to take on the case, he takes it on.
Q. Do you pay him any attorney's fees, as you go along, for this case?
A. No.
Q. Has he charged you, as you go along, for attorney's fees or costs in this case?
A. No.[11]

Instead, Mr. Charouhis seeks remuneration through a fee-shifting provision con-

---

1. *See* January 27, 2004 Deposition of Steven Brother (Doc. No. 36, Ex. 1) lines 12 through 14 at pg. 5.

2. *See id.*, line 20 at pg. 5 through line 8 at pg. 6. The Plaintiff is also a diabetic. *See id.*, lines 1 through 5 at pg. 38.

3. *See* Affidavit of Plaintiff, Steven Brother[,] in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 47), ¶ 2 at 1.

4. *See* Doc. No. 36, Ex. 1, lines 17–18 at pg. 7.

5. *See id.*, line 14 at pg. 8 through line 6 at pg. 9. Mr. Brother, his wife, and his son all receive social security benefits totaling $1,600.00 per month.

6. *See id.*, line 19 at pg. 36 through line 6 at pg. 37.

7. *See id.*, lines 1–6 at 39.

8. Indeed, in one deposition, Mr. Brother reported that he travels from Miami to Daytona Beach at least once a month:

Q. How often do you travel to Daytona Beach?
A. As much as I can. But I try at least once a month.
*See* December 5, 2003 Deposition of Steven Brother, lines 12 through 14 at pg. 5 in *Brother v. Ocean Jewels Club Condo. Ass'n*, 6:03–CV–432–ORL–28KRS, Doc. No. 63 (M.D.Fla. 2003).

9. *See* December 5, 2003 Deposition of Steven Brother, line 24 at pg. 4 through line 3 at pg. 5 in *Brother v. Ocean Jewels Club Condo. Ass'n*, 6:03–CV–432–ORL–28KRS, Doc. No. 63 (M.D.Fla.2003).

10. *See* January 27, 2004 Deposition of Steven Brother in *Brother v. Americano Beach Lodge Resort Condo. Ass'n*, 6:03–CV–699–ORL–28DAB (Doc. No. 37, Ex. 3), line 19 at pg. 8 through line 8 at pg. 9.

11. *Id.*, line 25 at pg. 57 through line 10 at pg. 57.

tained in the ADA.[12] That provision reads, in relevant part, as follows:

> In any action . . . commenced pursuant to this Act, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . .

42 U.S.C. § 12205.

The Plaintiff receives no compensation for bringing these actions:

> Q. Do you make money off any of these title three lawsuits other than monetary figures that may be included in settlement agreements?
>
> A. Mr. Charouhis has made it very clear that we don't make money, but I did ask if it's possible to incur—if

he can try to get back whatever I lost because of the problems I face with these hotels or businesses, but I know for a fact you do not make money off of ADA. It's not—it's not set up that way.[13]

### B. The Facts of This Case

Against that backdrop, in the Fall or Winter of 2002[14], the Plaintiff, along with his wife, Valerie Crosby,[15] and his son, Matthew,[16] traveled to Jacksonville, Florida.[17] The purpose of their trip was to visit Mr. Brother's mother.[18]

While on route back to Miami, by way of Orlando, the Plaintiff and his family stopped in Deltona, Florida.[19] There, Mr.

---

**12.** *See* December 5, 2003 Deposition of Steven Brother, lines 4 through 10 at pg. 57 in *Brother v. Ocean Jewels Club Condo. Ass'n,* 6:03–CV–432–ORL–28KRS, Doc. No. 63 (M.D.Fla.2003).

> Q. When you bring a lawsuit like this one, do you pay your attorney for his time or what is your fee arrangement with him?
> A. Well, the way I understand the new law is that whatever he bills, his time, he bills it to you, to the—to the client—to your clients, I mean. It's the way the law is set up.

**13.** *See* December 5, 2003 Deposition of Steven Brother, lines 5 through 13 at pg. 28 in *Brother v. Ocean Jewels Club Condo. Ass'n,* 6:03–CV–432–ORL–28KRS, Doc. No. 63 (M.D.Fla.2003).

**14.** The Plaintiff does not recall the exact date of his visit to the Defendant's establishment. *See* Doc. No. 47, ¶ 3 at 1.

**15.** *See* Doc. No. 36, Ex. 1 lines 11 through 14 at pg. 6. The Plaintiff's wife, Valerie Crosby, is also disabled: she is legally blind. *See id.,* lines 15 through 20 at pg. 6. In addition, she is deaf. *See id.* Mr. Brother's deposition testimony also reflects that Valerie suffers from cervical cancer, *see id.,* lines 13 through 16 at pg. 18, and diabetes, *see id.,* lines 21 through 24 at pg. 8. He reports that "her diabetes is out of control", *id.,* line 23 at pg. 8, and that she has undergone radiation ther-

apy for her cancer, *see id.,* line 18 at pg. 29 through line 1 at pg. 30.

**16.** The Plaintiff's son, Matthew, was born in July of 2001. *See id.,* lines 18 through 20 at pg. 42. He was a premature baby. *See* Doc. No. 36, Ex. 3, line 13 at 36. According to Mr. Brother, Matthew has "some disability issues." *Id.,* line 17 at pg. 36.

**17.** *See* Doc. No. 36, Ex. 1, line 17 at pg. 9 through line 9 at pg. 10.

**18.** *See id.,* line 24 at pg. 9 through line 5 at pg. 10.

**19.** *See id.,* lines 6 through 9 at 10. Instead of taking Interstate 95 all the way to Miami (the most direct route), the Plaintiff traveled through the center of the State taking Interstate 95 to Interstate 4 to the Florida Turnpike. When asked why he accessed Interstate 4, the Plaintiff replied:

> I guess I wanted to head back by the turnpike. To me, either way, it doesn't really matter. I live close to the turnpike, and I don't pay for tolls. I have a toll permit. That's why, to me, it's free whichever way I go.

*Id.,* lines 16 through 20 at pg. 40. There is no indication as to why Mr. Brother did not pick up the turnpike in Ft. Pierce or at another location in South Florida where the turnpike parallels Interstate 95.

Brother discovered the Best Western Deltona Inn "by chance." [20] The Defendant, Tiger Partner, LLC, owns and operates the Best Western Deltona Inn.[21]

Upon entering the Defendant's establishment, Mr. Brother inquired if there were any accessible guest rooms.[22] In response, hotel personnel allegedly informed him that none were available; they were all occupied.[23] Mr. Brother then inquired as to whether there were any alternative rooms available which he could get his wheelchair in and out.[24] Hotel personnel again informed him that no rooms were available.[25]

At that time, Mr. Brother asked whether the hotel provided roll-in showers and "deaf kits"—kits containing such items as: (1) a text telephone; (2) a light that flashes when someone knocks on the door; (3) a device which clamps onto the bed mattress and vibrates when the fire alarm is activated; and (4) a light which connects to the room phone and flashes when the phone rings.[26] The hotel allegedly indicated that it did not.[27] As a result, Mr. Brother left the Defendant's establishment,[28] and filed this lawsuit seeking injunctive relief.[29] The Complaint, filed April 11, 2003, alleges a multitude of ADA violations.[30]

Turning to the issue at hand, the Defendant-hotel now moves this Court to enter summary judgment against Mr. Brother on the ground that, *inter alia*, he lacks standing to prosecute this action.[31] On that point, the Defendant asserts that Mr. Brother has failed to demonstrate an immediate danger of future injury (a requirement of Article III standing) because he "lives hundreds of miles away from the Best Western Deltona Inn, has only visited the hotel once by happenstance, only travels three or four times a year (and when he does travel Deltona is not his place of destination), is not sure when he visited the Best Western, and only has a general intent to return to the facility." [32]

In response, Mr. Brother asserts that he has a specific intent to return to the Defendant's establishment.[33] In an affidavit filed in opposition to summary judgment, Mr. Brother attests:

I have a reservation to stay at the hotel on Friday, November 26, 2004. I intend to travel to Jacksonville, Florida to visit my mother and plan to stop at the Defendant's hotel on the way back, spend the night, and go to Disney World and return to Miami the next day. I have had that intent since my initial visit to

---

20. *Id.,* lines 8–9 at 10.

21. *See* Doc. No. 47, ¶ 3 at 1.

22. *See* Doc. No. 47, ¶ 4 at 1.

23. *See id.*

24. *See id.*

25. *See id.*

26. *See id.*

27. *See id.*

28. Doc. No. 36, Ex. 1, lines 10 through 14 at pg. 10.

29. *See generally* Doc. No. 1.

30. *See generally id.*

31. *See generally* Motion for Summary Judgment, Statement of Undisputed Facts and Memorandum of Law (Doc. No. 35).

32. *Id.* at 12 (internal citation omitted) Mr. Brother's testimony about the amount of travel he engages in is inconsistent. In the *Ocean Jewels Club Condo Ass'n* litigation, he testified that he travels to Daytona Beach about once a month. In the instant litigation, he testified that he travels three or four times a year.

Q. So It's fair to say you take three or four trips per year?
A. Approximately, yes.

Doc. No. 36, Ex. 1, lines 4 through 6 at pg. 27.

33. *See* Doc. No. 47, ¶ 10 at 5–6.

the property, and since before filing this lawsuit. That was one of the reasons why I viewed the accessibility of the Defendant's facilities during my fall/winter 2002 visit. I visit my mother in Jacksonville often, at least once a year, and try for other holidays as well. I am also in the Orlando and Daytona Beach areas several times a[ ] year, and travel between the two often. During my travels between Orlando and Daytona Beach, and between Jacksonville and Orlando, I use the I–4 corridor, off which Defendant's hotel is located. Besides just the November 26, 2004 visit, before filing this lawsuit I also planned on using the Defendant's hotel during my numerous travels in that area, and will do so, once the hotel and its facilities are made accessible to me.[34]

The Court will now consider the parties' arguments.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is one that might affect the outcome of the case. *See id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant

satisfies this requirement, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). Nor may the non-moving party rely on a mere scintilla of evidence supporting its position. *See Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). Rather, for a court to find a genuine issue for trial, the non-moving party must establish, through the record presented to the court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank,* 83 F.3d 1347, 1349 (11th Cir. 1996). When a court considers whether or not to enter summary judgment, it views all of the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993).

## IV. LEGAL ANALYSIS

### A. Standing

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1)[he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

---

34. *Id.* (internal footnote omitted).

■ "In addition, because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges ... a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001) (internal citation and quotation marks omitted); (emphasis in the original). Asserting a past injury is not enough. A past "exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal citation omitted).

■ Applying these principles, this Court finds that Mr. Brother has failed to satisfy the requirements of Article III. While he asserts that he plans to return to the Defendant's establishment, the record evidence indicates otherwise: that Mr. Brother's arrangements are speculative at best, failing to evidence a credible threat of future injury. Several factors have led the Court to this conclusion.

First, Mr. Brother lives more than two hundred and eighty miles (280) away from the subject property, and admits that he travels to the greater Orlando area (Disney World in particular) only about twice a year. *See* Doc. No. 36, Ex. 1, lines 3 through 5 at pg. 18.

Second, Mr. Brother's testimony indicates he lacks "a continuing connection" to the subject property. *See Rodriguez v. Investco, L.L.C.*, 305 F.Supp.2d 1278, 1284–85 (M.D.Fla.2004) (finding that litigious ADA plaintiff failed to establish any basis for relief where he lacked a continuing connection to the defendant's facility). Mr. Brother, after all, found the Best Western Deltona Inn "by chance." Doc. No. 36, Ex.1, lines 8–9 at 10. He had never attempted to stay at that location

prior to the Fall or Winter of 2002. Moreover, he has not attempted to return to the Best Western Deltona Inn since that time. *See id.*, lines 21 through 23 at 9. Also, it is undisputed that Mr. Brother never stayed at the Best Western Deltona Inn on the night in question, *see id.*, lines 10 through 11 at pg. 10. *See Lamb v. EID Mgmt., LLC*, 2:02–CV–312–FTM–29DNF, Doc. No. 65 (M.D. Fla. Jul 8, 2003) (finding that an ADA plaintiff failed to show a "real and immediate" threat of future injury where, *inter alia*, there was no evidence that plaintiff tried to stay at hotel prior to the time giving rise to the litigation, and where the plaintiff did not attempt to stay at hotel since that time).

This Court additionally notes that there are countless other hotels located closer to Disney World than the Best Western Deltona Inn (which is located approximately fifty miles from that tourist attraction) including hotels that Mr. Brother is suing. *See* Doc. No. 36, Ex. 1, line 15 at pg. 15 through line 14 at pg. 16.

■ The fact that Mr. Brother made a reservation at the Defendant's hotel after he filed his Complaint in this action is immaterial. So, too, are any other facts and circumstances related by Mr. Brother after he commenced this civil action. "The existence of standing is determined as of the date suit is filed." *Moyer v. Walt Disney World, Co.*, 146 F.Supp.2d 1249, 1253 (M.D.Fla.2000) (internal citation omitted); *Resnick v. Magical Cruise Co., Ltd.*, 148 F.Supp.2d 1298, 1301 (M.D.Fla.2001) ("The determination of whether a plaintiff has standing to bring suit is made as of the date the lawsuit is commenced"); (internal citations omitted); *see also Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir.2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed"); (internal citations omit-

ted). "Belated efforts to bolster standing [therefore] are futile." *Moyer,* 146 F.Supp.2d at 1253; *Resnick,* 148 F.Supp.2d at 1302 ("[B]ecause standing is determined as of the date of the commencement of the lawsuit, any attempts to achieve standing after the suit was filed are ineffective"); (internal footnote admitted). This is particularly the case here where Mr. Brother is involved in a multitude of lawsuits against the hotel industry.

The Court finds the decisions rendered in *Brother v. CPL Invs., Inc.,* 317 F.Supp.2d 1358 (S.D.Fla.2004), *Rosenkrantz v. Markopoulos,* 254 F.Supp.2d 1250 (M.D.Fla.2003), and *Brother v. Rossmore Tampa Ltd. P'ship,* 8:03–CV–1253–T–24MAP, Doc. No. 103 (M.D.Fla. Jun. 24, 2004) instructive on this point.

In *Brother v. CPL Inves., Inc.,* the United States District Court for the Southern District of Florida concluded that Mr. Brother lacked standing to pursue an ADA action against the Ramada hotel because he: (1) performed only a visual inspection of the premises; (2) never stayed at the hotel; and (3) was involved in at least fifty other lawsuits · in Florida which were brought pursuant to the ADA. *See* 317 F.Supp.2d at 1368–70. The Court also found persuasive the fact that Mr. Brother failed to keep a reservation at the hotel because his counsel of record (Mr. Charouhis) told him that no changes had been made since his visit giving rise to the cause of action. *See id.* at 1369. On those facts, Judge Martinez determined: "In light of his [Mr. Brother's] extensive litigation, the fact that he never stayed at the hotel, and his testimony about why he did not keep a subsequent reservation, the Court does not credit Mr. Brother's allegation that he intended to patronize the hotel." *Id.* at 1369 (internal citation omitted).

In *Rosenkrantz v. Markopoulos,* the United States District Court for the Middle District of Florida concluded that a disabled tourist living in Miami lacked standing to sue a hotel located in Clearwater, Florida where the plaintiff lived hundreds of miles away · from Clearwater beach; had only been to the location once; traveled only twice a year and the most direct route to and from the plaintiff's destination (North Carolina) came nowhere near the Clearwater area; and plaintiff had available countless other hotels located in the area including several which he had sued. *See* 254 F.Supp.2d at 1253.

Finally, in *Brother v. Rossmore Tampa Ltd. P'ship,* District Judge Susan C. Bucklew concluded that Mr. Brother lacked standing to assert an ADA claim against the Crowne Plaza—Tampa Westshore where he: (1) never spent the night at the hotel; (2) visited the hotel only once before bringing suit and one time after suit was filed; and (3) failed to respond to the motion for summary judgment.[35] *See generally* Doc. No. 103 in Case No. 8:03–CV–1253–T–24MAP. "[T]he fact that [the] Plaintiff made a reservation to stay at the hotel in August after he filed his complaint" was irrelevant because "[t]he determination of whether a plaintiff has standing to bring suit is made as of the date the lawsuit is commenced." *Id.* at 4 (internal citations omitted).

As in *CPL Inves., Inc., Markopoulos,* and *Rossmore,* the Plaintiff here has not sufficiently established a credible threat of future injury. That he has visited the Best Western Deltona Inn in the past proves nothing. And, in view of his extensive litigation history, Mr. Brother's professed intent to return to the property is insufficient. Indeed, to satisfy Article

---

**35.** According to Mr. Charouhis, Judge Bucklew's order in *Rossmore* is subject to a pend-ing motion to vacate. *See generally* Doc. No. 53 at 2.

III's standing requirements, Mr. Brother has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible.

Altogether, the facts and circumstances of this case demonstrate that Mr. Brother lacks a "continuing connection" to the Defendant's establishment. His explanation for his first visit to Deltona (to return to the turnpike) is incredulous, as is his desire to return to that facility around Thanksgiving. *See Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1284–85 (M.D.Fla.2004) (finding that litigious ADA plaintiff failed to establish that he "is being subjected" or "is about to be subjected" to prohibited discrimination where his explanation for his initial visit to the defendant's property was disingenuous, and where he did not convey an honest desire to return to the defendant's property). Accordingly, summary judgment is due to be granted.

### B. The ADA and a Need for a Legislative Solution

If history is any guide, then William Charouhis and his clients will adjust to this ruling so that their future filings satisfy Article III's standing requirements. When that occurs, this Court (respecting the separation of powers) will be obligated to allow such cases to proceed.

This being said, it should be emphasized that the system for adjudicating disputes under the ADA cries out for a legislative solution. Only Congress can respond to vexatious litigation tactics that otherwise comply with its statutory frameworks. Instead of promoting "conciliation and voluntary compliance[,]" the existing law encourages massive litigation. *See Rodriguez v. Investco, LLC*, 305 F.Supp.2d 1278, 1281 (M.D.Fla.2004) (footnote omitted). "[P]re-suit settlements[,]" after all, "do not vest plaintiffs' counsel with an entitlement to attorney's fees" under the ADA. *Id.* at 1282 (internal citation omit-

ted). Moreover, the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals). *See Id.* at 1285 (finding a litigious ADA Plaintiff represented by William Charouhis is "merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant"). This is particularly the case in the Middle District of Florida where the same plaintiffs file hundreds of lawsuits against establishments they purportedly visit regularly. This type of shotgun litigation undermines both the spirit and purpose of the ADA.

### V. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. The Defendant's, Tiger Partner, LLC, d/b/a: Best Western Deltona Inn, April 1, 2004 Motion for Summary Judgment (Doc. No. 35) is **GRANTED**.

2. The Clerk of Court shall enter a **FINAL JUDGMENT** against the Plaintiff, Steven Brother, and in favor of the Defendant, Tiger Partner, LLC, d/b/a: Best Western Deltona Inn. The judgment shall provide that the Plaintiff, Steven Brother, shall take nothing on his claims against the Defendant, Tiger Partner, LLC, d/b/a: Best Western Deltona Inn. The judgment shall further provide that the Defendant, Tiger Partner, LLC, d/b/a: Best Western Deltona Inn, shall recover its costs arising from this action.

3. The Clerk of Court shall **CLOSE** the **FILE**.

4. All pending motions are **DENIED** as **MOOT**.