Jarek **MOLSKI,** Plaintiff,

v.

**MANDARIN TOUCH RESTAURANT; Evergreen Dynasty Corp.,** a California corporation; and **Brian McInerney** and **Kathy S. McInerney,** as joint tenants, Defendants.

**No. CV 04–0450 ER.**

United States District Court, C.D. California.

Aug. 30, 2005.

Stephen Yagman, Yagman Yagman & Reichmann, Venice, CA, Thomas E. Frankovich, Thomas E Frankovich Law Offices, San Francisco, CA, for Plaintiff.

Robert H. Appert, Robert H. Appert Law Offices, San Gabriel, CA, Alan H. Boon, Berger Kahn, Irvine, CA, for Defendants.

## ORDER DISMISSING CASE FOR LACK OF STANDING

RAFEEDIE, Senior District Judge.

On February 8, 2005, the Court issued an order to show cause why Plaintiff Jarek Molski's claim alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, et seq., should not be dismissed for lack of standing. On May 18, 2005, the Court issued an order indicating that the Court intended to treat the

order to show cause as a motion for summary judgment, citing the extensive factual record submitted. The parties were given the option of filing additional briefing and exhibits, or standing on their response to the Order to Show Cause. After considering the papers submitted in response to the Order to Show Cause and the order converting the matter to a motion for summary judgment, the Court has concluded that Molski's ADA claim should be dismissed because he lacks standing to pursue the matter.

## I. *Factual Background*

Plaintiff Jarek Molski is a resident of Woodland Hills, California. Defendant Mandarin Touch Restaurant is located in Solvang, California, 116 miles from Molski's residence. It is operated by Defendant Evergreen Dynasty Corporation. Evergreen Dynasty leases the Mandarin Touch property from Defendants Brian and Kathy S. McInerney.

■ Molski's complaint alleges that he ate dinner at the Mandarin Touch on January 25, 2003. After dinner, Molski attempted to use the restroom, but found that the entrance was too narrow. Molski then alleges that, as he was attempting to leave the restroom, his hand became "caught in the exterior door causing trauma to it." It was Molski's first and only visit to the Mandarin Touch as of the date he filed his lawsuit, January 23, 2004, which was nearly a full year after his visit.[1]

■ Plaintiff Molski's litigation history has been well documented in the decisions of this and other Courts. The Court takes judicial notice of the facts contained in *Molski v. Mandarin Touch*, 347 F.Supp.2d 860 (C.D.Cal.2004) ("*Molski I*"); *Molski v. Mandarin Touch*, 359 F.Supp.2d 924 (C.D.Cal.2005) ("*Molski II*"); *Molski v. EOS Estate Winery*, No. CV 03–5880–GAF (C.D. Cal. filed Jul. 14, 2005); *Molski v. Hitching Post I Rest.*, No. CV 04–1077–SVW (C.D. Cal. filed May 25, 2005); *Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938 (C.D.Cal.2005); *Molski v. Kahn Winery*, 381 F.Supp.2d. 1209 (C.D.Cal.2005); and *Molski v. Price*, 224 F.R.D. 479 (C.D.Cal.2004).

## II. *Analysis*

■ The Plaintiff has the burden of establishing that he has standing to pursue his claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To do so, the Plaintiff must first establish that he has suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." *Id.* at 560, 112 S.Ct. 2130. Second, "there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court.'" *Id.* (alteration in original) (citations omitted). Third, it must be "likely," as opposed to merely "speculative," that the

1. On January 28, 2005, Mr. Molski did return to the Mandarin Touch. For at least two reasons, this does not affect the standing analysis. First, standing is determined at the time the case is filed, and events occurring after that date are immaterial. *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1373–74 (M.D.Fla.2004). Second, Mr. Molski's own declaration establishes that his return cannot be seen as evidence of an intent to return that existed at the time this action was filed. Molski states that his return was motivated by a recent deposition in this case, in which it was represented that the Mandarin Touch had an accessible restroom. Because Mr. Molski did not learn of the restroom until his deposition, one year after the filing of this lawsuit, it cannot be evidence of an intent that existed at the time the lawsuit was filed.

injury will be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130.

In order to establish an injury in fact sufficient to confer standing to pursue injunctive relief, the Plaintiff must demonstrate a "real or immediate threat that the plaintiff will be wronged again-a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to such factors as: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant. *Arby's,* 359 F.Supp.2d at 947 n. 10. Assuming, arguendo, that Molski has established standing to pursue claims for damages, the Court nonetheless finds that an application of these factors demonstrates that Molski has not established a likelihood of future injury, and thus, lacks standing to pursue injunctive relief under the ADA.

### i. *Proximity of Public Accommodation*

As the distance between the plaintiff's residence and the public accommodation increases, the likelihood of future harm decreases. When the distance between the two is significant, especially if it is in excess of 100 miles, courts have consistently held that it weighs against finding a reasonable likelihood of future harm. *E.g., Molski v. Levon Inv.,* No. C03–8437–SVW (C.D. Cal. filed August 24, 2005)(finding that "considerable distance" of 30 miles between Molski's residence and gas station weighed against Molski establishing a likelihood of future harm); *Delil v. El Torito Rest.,* No. C93–3900, 1997 WL 714866, at *3 (N.D.Cal.1997)(holding that a plaintiff failed to establish likelihood of future harm

in part because she lived over 100 miles from restaurant); *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368, 1373 (M.D.Fla.2004)(finding plaintiff failed to establish likelihood of future harm in part because he lived 280 miles from hotel); *Hoepfl v. Barlow,* 906 F.Supp. 317, 320 (E.D.Va.1995)(finding plaintiff failed to establish likelihood of future harm where she had moved to a different state than defendant doctor). *Cf. Parr v. L&L Drive–Inn Rest.,* 96 F.Supp.2d 1065, 1079–80 (D.Haw.2000)(finding that, in a close case, factors including proximity of plaintiff's residence to defendant restaurant tipped scales in his favor).

Here, the Mandarin Touch is in Solvang, some 116 miles from Molski's residence in Woodland Hills. The considerable distance between Molski's residence and the Mandarin Touch weighs against finding a likelihood of future harm.

### ii. *Past Patronage of Business*

Where a plaintiff has visited a restaurant only once, the lack of a "history of past patronage seems to negate the possibility of future injury at [that] particular location." *Parr,* 96 F.Supp.2d at 1079. However, in what it described as a "close[ ] case," the *Parr* court nonetheless found that the plaintiff had standing to pursue his ADA claim because the restaurant in question was part of a chain, which the plaintiff frequented, and because the particular franchise at issue was "within a reasonable distance from Plaintiff's residence and along a familiar bus route." *Id.* at 1080; *see also Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1135–39 (9th Cir.2002)(citing *Parr* approvingly in holding that disabled plaintiff had standing to sue grocery store located 70 miles from his residence where (1) the defendant grocery store was part of a chain, at which the plaintiff regularly shopped; and (2) the

defendant grocery store was located near the residence of the plaintiff's grandmother, whom he visited weekly).

Molski had never been to the Mandarin Touch before January 25, 2003. Thus, *Parr's* presumption against future injury would seem to apply unless Molski can show a connection to the establishment similar to those in *Parr* and *Pickern.* He cannot. The Mandarin Touch is not a chain, nor has Molski identified anything unique about the restaurant that sets it apart from the hundreds of other restaurants he has sued. Although Mr. Molski professes to have a penchant for Asian food, that alone does not provide the same sort of connection that a consumer may have with a specific chain of restaurants or other businesses. Molski has patronized (and sued) dozens of Asian restaurants. Nothing distinguishes the Mandarin Touch from this extensive list.

### iii. *Plaintiff's Plans to Return*

ADA plaintiffs seeking injunctive relief must demonstrate that they themselves face a real and immediate threat of future harm. *See Parr,* 96 F.Supp.2d at 1079 (citing *Delil,* 1997 WL 714866, at *4). Standing cannot be established "by respondents' mere profession of an intent, some day, to return." *Lujan,* 504 U.S. at 564 n. 2, 112 S.Ct. 2130. To the contrary, where a plaintiff lacks "concrete plans to return," the Court must satisfy itself that the plaintiff's professed intent to return is sincere and supported by the factual circumstances of the case. *See Parr,* 96 F.Supp.2d at 1079–80. A serial plaintiff's extensive litigation history can undermine his professed intent to return. *Brother,* 331 F.Supp.2d at 1374–75 ("[I]n view of his extensive litigation history, Mr. Brother's professed intent to return to the property is insufficient. Indeed, to satisfy Article III's standing requirements, Mr. Brother has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible.").

For a variety of reasons, the Court finds that Mr. Molski's litigation history undercuts his credibility and belies an intent to return to the Mandarin Touch. As a result, Mr. Molski's professed intent to return to the Mandarin Touch is insufficient to establish standing.

First, like the plaintiff in *Brother,* Molski uniformly professes an intent to return to each business that he sues. Molski, of course, is a significantly more active litigant, having filed approximately 400 lawsuits, as compared to the 54 filed by Mr. Brother. If it is "simply implausible" that a plaintiff would return to 54 public accommodations, Molski's expressed intent to return to 400 or more businesses spread across the entire state of California is even more questionable. In order to credit Mr. Molski's expressed intent to return, one would have to believe that he had a genuine desire to return to each business he sued. In other words, one would have to believe that not one of the 400 public accommodations offered inadequate service, inferior products, was too inconvenient, or was otherwise so unsatisfying that Mr. Molski decided that he would never return to the business establishment in question.

Second, Mr. Molski's own track record demonstrates that he rarely returns to the businesses that he sues. On May 24, 2004, Molski testified that, of the businesses he had sued, he had visited "less than 10 percent" on more than one occasion. Not even a favorable settlement could entice Mr. Molski to return; he testified that he had returned to less than one percent of businesses with whom he had reached a settlement. Not surprisingly, the businesses to which he could recall returning were typically those located near his home in Woodland Hills. Although Mr. Molski testified in May 2004, that he intended to

return within a six to twelve month period to all the businesses with whom he had recently settled (a total, according to Molski's estimate, of approximately 50 different businesses), as of three months later, he had not returned to any.

Third, Mr. Molski has engaged in a well-established pattern of abusive litigation. In *Molski II,* this Court found that Mr. Molski's lawsuits regularly involved claims of physical injury, even when the allegations of the complaint foreclosed that possibility. 359 F.Supp.2d at 931–32.

Mr. Molski also regularly claims to be acting in the interest of the disabled community, describing himself as a "sheriff" out to improve access. His litigation tactics, however, belie this characterization. In this case, Mr. Molski's attorney sent a letter to counsel for the Defendants specifically instructing them not to repair the allegedly inaccessible facilities at the Mandarin Touch. "If any modifications are made," the letter threatens, "you will be subject to an action for spoliation of evidence pursuant to California Penal Code § 135."

Ignoring the rather obvious points that such remedial measures are by no means spoliation of evidence, and that, in fact, the law recognizes a strong policy in favor of such repairs, *see* Fed.R.Evid. 407, this letter demonstrates that access for the disabled is not Molski's actual motivation for his lawsuits. Were he truly interested in improving accessibility, he would encourage business owners to perform such remedial measures, not threaten them with criminal prosecutions for doing so. Moreover, the repairs would not effect his ability to pursue his lawsuit for damages. Molski could still testify to the barriers as they existed at the time of his visit and present his expert's report regarding the existence of the barriers. However, repairs would effect Molski in one respect: if there were no continuing violations, it

would render moot Molski's claim for injunctive relief under the ADA. *Norman–Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d 1260, 1274 (9th Cir.1998)(case is moot where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation"); *see also Molski v. Mosby Winery,* No. CV 04–1076–NM (C.D. Cal. filed July 19, 2005)(dismissing ADA claim on mootness grounds); *Jankey v. Baker's Square Alhambra,* No. CV 04–4826–SJO (C.D. Cal. filed May 9, 2005)(same). Without a federal ADA claim, if the Court declined to exercise supplemental jurisdiction over his pendant state law claims, Molski would be forced to proceed in state court, where he would have to face defendants (and juries) on their home turf. *See Molski II,* 359 F.Supp.2d at 935.

### iv. *Frequency of Travel Near Business*

As discussed above, Molski claims to have driven up the California coast between 15–20 times over the past two years, and has gone wine tasting in the Central Coast region on several occasions. During those trips, he "often," though not always, stops in the Solvang area. Even accepting this general assertion, Molski's travel near Solvang is far less frequent than the plaintiffs in *Parr* and *Pickern,* who either lived near the public accommodation in question, or visited the area on a weekly basis. Moreover, according to Mr. Molski's declaration, the contact is often insubstantial, such as stopping for gas or taking a short rest to break up the trip. Such contacts fail to demonstrate a significant connection with the Solvang area.

### III. *Conclusions*

The *Parr* case, which both parties rely on in their moving papers, guides the Court's analysis in this matter. The *Parr* court noted that it was a close case, and

that "[r]easonable courts could reach different results," on the issue of whether the plaintiff had established standing. 96 F.Supp.2d at 1079. The facts that Mr. Molski alleges in order to establish standing, however, compare unfavorably to those alleged by the plaintiff in the *Parr* case in almost every respect. Mr. Parr demonstrated a specific connection with the L & L brand, which Mr. Molski has not done with the Mandarin Touch brand. Mr. Parr lived near the restaurant in question, while Mr. Molski lives hours from the Mandarin Touch. Mr. Parr's local bus route took him past the L & L, Mr. Molski's travel near the Mandarin Touch is far less frequent. Finally, and perhaps most importantly, the Court judged Mr. Parr's professed intent to return to the L & L to be sincere, while this Court has serious doubts about Mr. Molski's intent to return to the Mandarin Touch. If Mr. Parr presented a close case on the issue of standing, Mr. Molski falls far short.[2] Accordingly, the Court finds that Mr. Molski has not established standing to pursue injunctive relief against the Mandarin Touch and hereby GRANTS summary judgment in favor of the Defendants and orders DISMISSAL with prejudice of Plaintiff's case in its entirety.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax or by email, copies of this Order on counsel for the parties in this matter.

---

2. For obvious reasons, the Court's decision is narrowly limited to the facts of this case. The analysis would be considerably different if, for example, the Mandarin Touch was located closer to Molski's residence, or if Mr. Molski could demonstrate a more specific and substantial connection to the Mandarin Touch.