Jarek MOLSKI, Plaintiff,

v.

KAHN WINERY and A.K. Cellars, LLC., a California Limited Liability Company, Defendants.

Case No. CV 04–347 ER.

United States District Court, C.D. California.

Dec. 15, 2005.

Thomas E. Frankovich, Thomas E. Frankovich Law Offices, San Francisco, CA, for Plaintiff.

Michael S. Fauver, Hatch & Parent, Santa Barbara, CA, for Defendant.

## ORDER DISMISSING CASE FOR LACK OF STANDING

RAFEEDIE, Senior District Judge.

In light of the Court's recent holding on the issue of standing in *Molski v. Mandarin Touch*, 385 F.Supp.2d 1042 (C.D.Cal. 2005), the Court issued an order to show cause why plaintiff Jarek Molski's claim alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, should not be dismissed for lack of standing. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir.2001) (noting the Court has "both the power and the *duty* to raise the adequacy of [a plaintiff's] standing sua sponte") (emphasis added). The Court conducted an evidentiary hearing on Monday, October 17, 2005, at which plaintiff Jarek Molski ("Molski") and his attorney were present. Molski was examined under oath by his attorney, Thomas E. Frankovich, and the Court. For the reasons set forth below, the Court finds that Molski's ADA claim should be dismissed because he lacks standing to pursue the matter.

### I. *Factual Background*

Molski is a paraplegic who uses a wheelchair for mobility. He resides in Woodland Hills, California. Defendant Kahn Winery is a winery located in the Santa Ynez Valley wine country with a tasting room in Los Olivos, California.

On January 18, 2003, Molski visited Kahn Winery's tasting room.[1] While there, he claims to have encountered various "architectural barriers" that denied him equal access to the facilities. He al-

leges that the entrances to the winery's tasting rooms were too high, the front-entry doorframe was very narrow, the tasting counters were too high, and the port-o-potty was not handicapped accessible. In addition, Molski claims that he was injured while attempting to leave through the front entrance when he rolled his wheelchair down the three inch step separating the winery's rock landing entrance and the sidewalk below. In all, Molski contends that these "architectural barriers" made it difficult for him to enjoy the winery's accommodations and, in some instances, completely precluded him from using the accommodations. This was Molski's first and only visit to Kahn Winery. *Jarek Molski, etc., et al. v. Kahn Winery, et al.*, Reporter's Transcript of Proceedings Monday, October 17, 2005, 10:00 A.M. ("Molski Evidentiary Hearing") 41:13–20.

Over a year later, on January 20, 2004, Molski filed suit against Kahn Winery for injunctive relief and damages under Title III of the Americans with Disabilities Act ("ADA") and California Civil Code §§ 54, 54.1 and 54.3, *et seq.*, California Health & Safety Code § 19955, *et seq.*, the Unruh Civil Rights Act, and California Business and Professions Code § 17200, *et seq.*

■ Molski's litigation history has been well documented in the decisions of this and other Courts. *See Molski v. Sport Chalet, Inc.*, Case No. 04–358 ER, 2005 WL 3280516 (C.D.Cal. Nov. 9, 2005); *Molski v. Kahn Winery*, 381 F.Supp.2d 1209 (C.D.Cal.2005) (*Kahn Winery I* ); *Molski v. Mandarin Touch*, 385 F.Supp.2d 1042 (C.D.Cal.2005) (*Molski III* ); *Molski v. Mandarin Touch*, 359 F.Supp.2d 924 (C.D.Cal.2005) (*Moski II* ); *Molski v. Mandarin Touch*, 347 F.Supp.2d 860 (C.D.Cal.2004) (*Molski I* ); *Molski v.*

---

1. All future references to "Kahn Winery" or the "winery" refer to the Kahn Winery tasting room unless otherwise noted.

*Arby's Huntington Beach,* 359 F.Supp.2d 938 (C.D.Cal.2005); *Molski v. Price,* 224 F.R.D. 479 (C.D.Cal.2004); *Molski v. Hitching Post I Rest.,* No. CV 04–1077 SVW (C.D. Cal. filed Feb. 17, 2004); *Molski v. Levon Investments LLC,* No. CV 03–8437 SVW (C.D. Cal. filed Nov. 20, 2003); *Molski v. EOS Estate Winery,* No. CV 03–5880–GAF (C.D. Cal. filed Aug. 18, 2003); *Molski v. Madarin Touch,* No. 1172370, slip op. (Ca. Sup'r Ct.2005). The Court takes judicial notice of these cases and the facts contained therein.

In a prior decision in this case, the Court held that it would not exercise supplemental jurisdiction over Molski's state law claims. *Kahn Winery I,* 381 F.Supp.2d at 1211. Thus, Molski's claim for injunctive relief under the Title III of the ADA is the only claim remaining.

## II. *Discussion*

■ The issue before the Court is whether Molski has standing to seek injunctive relief under Title III of the ADA. Aside from attorney's fees, the only remedy available to a private litigant under Title III of the ADA is injunctive relief. § 12188(a)(1); *see also Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002) ("Damages are not recoverable under Title III of the ADA—only injunctive relief is available for violations of Title III.").

A plaintiff has the burden of establishing that he has standing to pursue his claims. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To do so, a plaintiff must first establish that he has suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical." *Id.* at 560, 112 S.Ct. 2130. Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the chal-

lenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court.' " *Id.* (alteration in original) (citations omitted). Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Id.* at 561, 112 S.Ct. 2130.

■ To establish standing to pursue injunctive relief, a plaintiff must demonstrate a "real or immediate threat that [he] will be wronged again—a 'likelihood of substantial and immediate irreparable injury.' " *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "A 'mere physical or theoretical possibility' that the challenged conduct will again injure the plaintiff is insufficient to establish a present case or controversy." *Coverdell v. Dep't of Soc. & Health Servs.,* 834 F.2d 758, 766 (9th Cir.1987). A plaintiff's "mere attestation that she fears repetition of the challenged conduct is insufficient to show a likelihood of recurrence." *Id.* In essence, the future recurrence of the challenged conduct must be objectively demonstrable. *Id.*

■ In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have been guided by: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency of travel near defendant. *Arby's,* 359 F.Supp.2d at 947 n. 10. Applying these factors, the Court finds that Molski has not established a likelihood of future injury.

### A. *Proximity of Public Accommodation*

■ As the distance between a plaintiff's residence and a public accommodation increases, the likelihood of future

harm decreases. Where the distance between the two is significant, especially if it is in excess of 100 miles, courts have often held that such a distance weighs against finding a reasonable likelihood of future harm. *E.g., Delil v. El Torito Rest.,* No. C93–3900, 1997 WL 714866, at *3 (N.D.Cal.1997) (holding that plaintiff failed to establish likelihood of future harm in part because she lived over 100 miles from restaurant); *Brother v. Tiger Partner, LLC,* 331 F.Supp.2d 1368, 1373 (M.D.Fla. 2004) (finding plaintiff failed to establish likelihood of future harm in part because he lived 280 miles from hotel); *Hoepfl v. Barlow,* 906 F.Supp. 317, 320 (E.D.Va. 1995) (finding plaintiff failed to establish likelihood of future harm where she had moved to a different state than defendant doctor).

Here, Kahn Winery is in Los Olivos, California some 104 miles from Molski's residence in Woodland Hills. The considerable distance between Molski's residence and Kahn Winery weighs against finding a likelihood of future harm.

### B. *Past Patronage of Business*

██ Where a plaintiff has visited a restaurant only once, the lack of a "history of past patronage seems to negate the possibility of future injury at [that] particular location." *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1079 (D.Haw. 2000). Molski had never been to Kahn Winery before January 18, 2003. Thus, *Parr's* presumption against future injury applies unless Molski can show a connection to the establishment similar to that in *Parr.* He cannot. Unlike the facts in *Parr,* Kahn Winery is not a chain and its closest tasting room is located over one hundred miles from Molski's home. In addition, Molski has not stated a particular preference for the wines from Kahn Winery. When asked about the appeal of Kahn Winery's wines, Molski said, "I like a lot of wines, you Honor. I don't recall not liking wines from Kahn Winery." Molski Evidentiary Hearing 42:13–20. Furthermore, despite waiting over one year to file suit against Kahn Winery following his January 2003 visit, Molski did not return to Kahn Winery at any point during that year. Thus, Molski's lack of past patronage at Kahn Winery and demonstrated lack of preference for its goods and services weigh against the likelihood of future harm.

### C. *Plaintiff's Plans to Return*

██ ADA plaintiffs seeking injunctive relief must demonstrate that they themselves face a real and immediate threat of future harm. *See Parr,* 96 F.Supp.2d at 1079 (citing *Delil,* 1997 WL 714866, at *4). Where a plaintiff lacks "concrete plans to return," the Court must satisfy itself that a plaintiff's professed intent to return is sincere and supported by the facts. *See id.* at 1079–80. Courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return. *Brother,* 331 F.Supp.2d at 1374–75 ("[I]n view of his extensive litigation history, Mr. Brother's professed intent to return to the property is insufficient. Indeed, to satisfy Article III's standing requirements, Mr. Brother has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible.").

Despite Molski's professed intent to return to Kahn Winery in the future, the Court finds that his testimony lacks credibility and is undermined by several objective considerations. *C.f., Sports Chalet, Inc.,* Case No. 04–0358 ER (holding that despite finding plaintiff's testimony to be "evasive, dishonest, deceptive, and contrived" several objective considerations "established the minimal requirements for standing"). The Court views Molski's litigation history, as exemplified by his having been declared a vexatious litigant, to

be particularly telling with regards to his credibility as a witness and his professed intent to return to Kahn Winery.

First, like the plaintiff in *Brother*, Molski uniformly professes an intent to return to each business that he sues. Molski Evidentiary Hearing 36:1–5. Molski is a significantly more active litigant, having filed approximately 500 lawsuits since 2001, as compared to the fifty-four filed by Mr. Brother. Molski Evidentiary Hearing 36:6–37:10. If it is "simply implausible" that a plaintiff would return to fifty-four public accommodations, Molski's expressed intent to return to 500 businesses spread across the entire state of California is highly doubtful. Molski's own track record demonstrates that he rarely returns to the businesses that he sued. *See Molski III*, 385 F.Supp.2d at 1046–47 (noting that Molski had previously testified that, of the businesses he had sued, he had visited "less than 10 percent" on more than one occasion).

Second, Molski has engaged in a pattern of abusive litigation that has the effect of significantly undermining his credibility. In *Molski II*, the Court found that Molski regularly claimed to suffer a physical injury, even when the allegations of the complaint foreclosed that possibility. 359 F.Supp.2d at 931–32. Examining Molski's complaints in the aggregate reveals his abusive litigation history and resulting lack of credibility.

For example, in *Molski v. El 7 Mares Restaurant*, Case No. C04–1882 (N.D.Cal. 2004), Molski claims that, on May 20, 2003, he attended the El 7 Mares Restaurant for the purposes of dining out. Molski alleges that the restaurant lacked adequate handicapped parking and that the food counter was too high. After the meal, Molski attempted to use the restroom, but because the toilet's grab bars were improperly installed, he injured his shoulders in the process of transferring himself from his wheelchair to the toilet. Thereafter, he was unable to wash his hands because of the restroom's design.

Although this complaint appears credible standing alone, its validity is undermined when viewed alongside Molski's other complaints. In *Molski v. Casa De Fruta, L.P.*, Case No. C04–1981 (N.D.Cal. 2004), Molski alleges that he sustained nearly identical injuries on the exact same day, May 20, 2003. In *Casa de Fruta*, Molski alleges that he patronized Casa de Fruta for the purpose of wine tasting. On arrival, Molski was again unable to locate van accessible parking. Once inside, Molski again found the counter to be too high. After wine tasting, Molski again decided to use the restroom, and again, injured his upper extremities while in the process of transferring himself to the toilet. Thereafter, he was once again unable to wash his hands due to the design of the restroom.

This was, apparently, not the end of Molski's day. In *Molski v. Rapazzini Winery*, 400 F.Supp.2d 1208 (N.D.Cal. 2004), Molski once again alleges that he sustained nearly identical injuries on the exact same day, May 20, 2003. Molski claims he visited the Rapazzini Winery for the purpose of wine tasting. Again, Molski complains that the parking lot lacked adequate handicapped van accessible parking. Upon entering the establishment, he discovered that the counter was too high. After tasting wine, he again needed to use the restroom. In the course of transferring himself from his wheelchair to the toilet, he injured himself yet again. Thereafter, he was again unable to wash his hands due to the restroom's design.

It would be highly unusual—to say the least—for anyone to sustain two injuries, let alone three, in a single day, each of which necessitated a separate federal law-

suit. But in Molski's case, May 20, 2003, was simply "business as usual."

The following day, May 21, 2003, Molski claims to have been injured at four separate businesses. In *Molski v. Longhouse Restaurant*, C04–1492 (N.D.Cal.2004), Molski alleges he injured his upper extremities trying to transfer himself onto a toilet at the Longhouse Restaurant in Gilroy. In *Molski v. King & I Investment Group*, C04–1493 (N.D.Cal.2004), Molski claims he injured his upper extremities ascending steps at the King & I Thai Cuisine restaurant in Morgan Hill. In *Molski v. Morgan Hill 76*, C04–1945 (N.D.Cal. 2004), Molski claims to have injured his upper extremities going over a step at the Morgan Hill 76 gas station. Finally, in *Molski v. La Rochelle*, C04–1985 (N.D.Cal. 2004), Molski alleges he scraped his hands when he became wedged in the bathroom door at the La Rochelle winery in San Jose.

The day after that, May 22, 2003, Molski again claims that he was injured at four separate business establishments. In *Molski v. Pump N Go*, C04–1854 (N.D.Cal. 2004), Molski claims to have injured his upper extremities transferring himself to the toilet at the Pump N Go gas station in Morgan Hill. In *Molski v. The Cove*, C04–1880 (N.D.Cal.2004), Molski claims to have injured his upper extremities when he tried to transfer himself onto a toilet which had only one grab bar at The Cove restaurant in Gilroy. In *Molski v. Casa Medina*, C04–1947 (N.D.Cal.2004), Molski claims to have injured himself while negotiating architectural barriers at the Casa Medina restaurant in San Juan Bautista. Finally, in *Molski v. Albertson's, Inc.*, C04–1984 (N.D.Cal.2004), Molski again claims to have injured himself when negotiating architectural barriers at the Albertson's market in Morgan Hill, California.

And the day after that, May 23, 2003, Molski claims he was injured at five separate businesses that were separated from one another by a total distance of more than 140 miles. In *Molski v. Cloninger Cellars*, C04–1853 (N.D.Cal.2004), Molski claims to have injured his upper extremities traversing rocks in a parking lot at the Cloninger Cellars winery in Gonzales. In *Molski v. Toro Petroleum*, C04–1941 (N.D.Cal.2004), Molski claims to have injured his upper extremities transferring himself onto a toilet at the Gonzales Unocal 76 gas station in Gonzales. In *Molski v. Roy's Drive–In*, C04–1983 (N.D.Cal. 2004), Molski claims he injured his shoulders transferring himself onto the toilet, and also when he wheeled off the sidewalk, at Roy's Drive–In restaurant in Salinas. In *Molski v. Di Fronzo Properties*, CV 04–3122 (C.D.Cal.2004), Molski claims to have injured his upper extremities overcoming a two-to-three inch threshold at Zadok's Coffee House in Pismo Beach. Finally, in *Molski v. Cracked Crab Restaurant*, CV 04–3544 (C.D. Cal 2004), Molski claims to have injured his upper extremities transferring himself onto a toilet at the Cracked Crab Restaurant in Pismo Beach.

As in the instant case, all these visits resulted in federal litigation filed approximately one year later. Molski filed sixteen separate complaints for the vastly similar injuries he sustained between May 20, 2003, and May 23, 2003. The Court simply does not believe that Molski suffered sixteen similar injuries, generally to the same part of his body, in the course of performing the same activity or activities, over a four-day period. This is to say nothing of the hundreds of other lawsuits Molski has filed over the last four years, many of which make nearly identical allegations. *See Molski II*, 359 F.Supp.2d at 927–928; *Molski I*, 347 F.Supp.2d at 864–65.

Furthermore, Molski regularly claims to be acting in the interest of the disabled community, describing himself as

a "sheriff" out to improve access. His litigation tactics, however, belie this characterization. The record before the Court leads it to conclude that Molski's lawsuits are instead filed maliciously, thereby reducing his credibility. The ADA is intended to achieve the prompt remediation of architectural and other barriers that impede access to places of public accommodation by the disabled community. By tacking on state law claims for Unruh damages to his federal ADA complaints, Molski reveals his true motive: to extort a cash settlement. Rather than further the prompt remedial purposes of the ADA, these Unruh state law claims for money damages lengthen the time it takes to settle disputes, add additional issues to a case, and increase the litigation costs of both parties to a dispute. As a result, access—Moslki's alleged purpose in bringing these claims—is greatly delayed and rarely achieved.

Molski's true motive is evident in a letter his attorney sent to counsel for a defendant in another case. This letter specifically instructs the defendant *not* to repair the allegedly inaccessible facilities at the restaurant. *See Molski III,* 385 F.Supp.2d at 1047. "If any modifications are made," the letter threatens, "you will be subject to an action for spoliation of evidence pursuant to California Penal Code § 135." *Id.* Ignoring for the moment the rather obvious points that remedial measures are not spoliation of evidence, and, in fact, the law recognizes a strong policy in favor of such repairs, *see* Fed.R.Evid. 407, this letter has a strong tendency to demonstrate that access for the disabled is not Molski's motivation for his lawsuits. If Molski were truly interested in achieving access, he should encourage business owners to perform remedial measures, not threaten them with criminal prosecutions. He also would not wait over one year before filing suit, as he did in the present case. Moreover, the repairs would not effect his ability to pursue his lawsuit for damages. Molski could still testify to the barriers as they existed at the time of his visit, present photos of the barriers as they existed at the time of his visit, and present his expert's report regarding the existence of the barriers. However, repairs would effect Molski in one respect: if there were no on-going violations, Molski would lack standing to pursue his claim for injunctive relief. Without standing to pursue injunctive relief, Molski could not advance a federal ADA claim or state law claims for damages, and, if the court declined to exercise supplemental jurisdiction over his pendant state law claims, he would be forced to proceed in state court, where he would have to face defendants (and juries) on their home turf.

■ Third, Molski has expressed no *definite* plans to return to Kahn Winery. Instead, he only has stated a general intent to return sometime in the future. Molski Evidentiary Hearing 35:12–14. Generalized plans to return are insufficient to confer standing in an action for injunctive relief. *See Lujan,* 504 U.S. at 564, 112 S.Ct. 2130 (holding that a profession alone of an intent to return is "simply not enough" to confer standing).

■ Fourth, under the facts of this case, any attempted reliance on the futile-gesture provision of the ADA is misplaced and unwarranted.[2] In *Pickern v. Holiday Quality Foods Inc.,* the Ninth Circuit held that an ADA plaintiff had standing to seek

---

**2.** The futile gesture provision of the ADA provides that a person need not "engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply its provisions." § 12188(a)(1).

injunctive relief under the ADA where he had actual knowledge of the illegal barriers preventing access to the grocery market, had a preference for that particular brand of grocery markets, and stated that he would shop at that particular location if it were accessible. *Id.*, 293 F.3d 1133, 1138 (9th Cir.2002). Thus, the futile gesture provision applies to plaintiffs who are deterred from visiting a place of public accommodation he is otherwise likely to visit. *See id.* at 1135–38 (noting that plaintiff patronized defendant's chain of grocery markets prior to learning of the architectural barriers and would do so again if the barriers were removed).

Here, Molski had never visited Kahn Winery before January 18, 2003, and has not visited it since. He has expressed no preference for the wines at Kahn Winery and has no ties to the Los Olivos area. Thus, the futile gesture provision is not triggered under these facts because Molski has not shown that Kahn Winery is a place of public accommodation that he is otherwise likely to visit absent the architectural barriers. Any professed intent otherwise by Molski is abundantly controverted by the objective evidence, and, like so much of his testimony in this case, contrived only to establish standing.

### D. *Frequency of Travel Near Business*

Molski's connection to Los Olivos is vastly more attenuated than those in *Parr* and *Pickern*. He is not a local bus ride away from Los Olivos, nor does he regularly visit family nearby. He does claim to have driven up the coast approximately 15 to 20 times in the past two years in order to visit a cousin in Morgan Hill, some 230 miles North of Los Olivos, and also claims to have gone wine tasting in the Central Coast region on several occasions. *See* Molski Evidentiary Hearing 11:4–16, 17–22. During these trips, he claims to "often" stop along Highway 101 for gas or food or to take a break from driving. *Id.*

12:9–13:24. The Court did not believe this testimony which was contrived to establish standing. As described in detail in this and other opinions, his litigation history demonstrates that these trips up the coast to "visit his cousin" were merely drive-by efforts to build an inventory of potential defendants to be sued one year later. *See* discussion *supra* Part II.C.

In addition, Los Olivos is at least ten miles removed from the nearest exit of Highway 101. *Id.* That is a long way to go just to get gas and a bite to eat when traveling up the highway. His frequency of travel is far less than that of the plaintiffs in *Parr*, who traveled near the public accommodation daily, and in *Pickern*, who traveled near the public accommodation weekly. Such general, unbelievable assertions fall far short of the actual or imminent threat of injury required for standing. *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

### III. *Conclusion*

As the foregoing demonstrates, all factors weigh heavily against finding standing in this case. In contrast to the Court's finding of standing in the case of *Molski v. Sports Chalet, Inc.*, there are no objective facts that would support Molski's standing to seek injunctive relief under Title III of the ADA against Kahn Winery. Throughout the evidentiary hearing Molski's testimony was evasive, dishonest, deceptive, and contrived. In addition, Molski's attorney only asked leading questions that suggested the desired answer and became visibly upset or impatient when Molski did not answer his questions with the "correct" or "desired" answer. *See* Molski Evidentiary Hearing 10:14–23 ("Q: And you have family in that area? A. Right now my cousin lives in Morgan Hill. Q. *Just answer my question, please.* Did you have family in the San Jose Area? The Court: When? At what time?") (emphasis

added). Therefore, based on the facts of the case and a careful review of the record, the Court holds that plaintiff Jarek Molski lacks standing to pursue injunctive relief against defendants Kahn Winery and A.K. Cellars, L.L.C. and his claim under 42 U.S.C. § 12101 *et seq.* is hereby **DISMISSED.**

IT IS SO ORDERED.